SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (SBN 158253)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com

Attorney for Plaintiff
[additional counsel identified below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VAMSI TADEPALLI, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No.: 15-cv-04348-MEJ

**CLASS ACTION**

NOTICE OF UNOPPOSED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

Date: December 10, 2015
Time: 10:00 a.m.
Courtroom: B – 15th Floor

# TABLE OF CONTENTS

NOTICE OF MOTION ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. DESCRIPTION OF THE LITIGATION ........ 3

III. THE SETTLEMENT AGREEMENT ........ 5

IV. THE SETTLEMENT IS WITHIN AN APPROPRIATE RANGE FOR APPROVAL ........ 6

A. The Standard for Preliminary Approval of Settlement Agreement. ........ 6

B. The Settlement Agreement Resulted From Arm's-Length Negotiations ........ 6

C. The Settlement Agreement Provides Full Monetary Relief to the Class ........ 7

D. Plaintiff's Counsel and Uber's Counsel Support the Proposed Settlement ... 8

V. THE PROPOSED PLAN FOR CLASS NOTICE IS APPROPRIATE ........ 8

VI. CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE ........ 9

A. The Class is Sufficiently Numerous ........ 10

B. Common Questions of Law and Fact Exist ........ 10

C. Plaintiff's Claims are Typical of those of the Class ........ 11

D. Plaintiff is an Adequate Representative of the Class ........ 11

E. Rule 23(b)(3)'s Requirements are Satisfied ........ 12

F. Common Legal and Factual Questions Predominate ........ 12

G. A Class Action is the Superior Means to Adjudicate Plaintiff's Claims ........ 12

VII. THE COURT SHOULD SCHEDULE A FINAL SETTLEMENT HEARING ........ 13

VIII. CONCLUSION ........ 13

i

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 7, 9, 10

*Bates v. UPS*, 204 F.R.D. 440 (N.D. Cal. 2001) .......... 7

*Churchill Village LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) .......... 6

*County of L.A. v. Jordan*, 459 U.S. 810 (1982) .......... 7

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) .......... 9

*Eisen v. Carlisle & Jacquelin*, 447 U.S. 156 (1974) .......... 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 7, 8, 9

*Hopson v. Hanesbrands, Inc.*, No. CV-08-0844, 2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) .......... 5

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007) .......... 5

*Jordan v. County of L.A.*, 669 F.2d 1311 (9th Cir. 1982) .......... 7

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) .......... 8

*Nat'l Rural Telecomms. Corp. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 4

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) .......... 5

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......... 7

**Codes**

28 U.S.C.A. § 1715. .......... 7

Cal. Ins. Code § 10199 .......... 1, 2

ii

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

**Misc.**

*Federal Practice and Procedure: Civil 3d* § 1762 (3d ed. 2005)....................7

Manual for Complex Litigation § 13.14....................2, 5

Manual for Complex Litigation § 30.41.....................4

*Newberg on Class Actions,* § 3.5 (4th ed. 2002)....................8

*Newberg on Class Actions,* § 11.41 (4th ed. 2002).....................5

iii

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

## NOTICE OF MOTION

To the Court and all parties of record:

Please take notice that on December 10, 2015 at 10:00 a.m. or as soon thereafter as the matter may be heard, Plaintiff Vamsi Tadepalli moves for an order: (1) preliminarily approving the proposed settlement of this class action on the terms set forth in the settlement agreement submitted herewith; (2) approving the proposed notice of settlement as set forth in the proposed notice submitted herewith; (3) certifying a settlement class; and (4) scheduling a final settlement hearing.

This motion is unopposed. The relief it requests—approval of a classwide settlement—is supported by Defendant Uber Technologies, Inc. ("Uber"). The motion is based on this notice of motion, the accompanying memorandum of points and authorities, declaration of Todd Schneider, declaration of Roberta Horton, and the Court's file on this case, and such other evidence as may be presented at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Ridesharing is a rapidly expanding option at California airports. Plaintiff filed a class action complaint alleging that Uber designed a software application (the "Uber app") that enables users to request and pay for ground transportation from third party transportation providers.[1] References to conduct by "Uber" herein refer to acts by Uber and/or Raiser-CA. The operative Second Amended Complaint ("SAC") further alleges that Uber

[1] Plaintiff is informed and believes that Rasier-CA, LLC ("Rasier") is a transportation network company ("TNC") licensed by the California Public Utilities Commission operating in California. Rasier-CA is a wholly-owned indirect subsidiary of Uber, a technology company that developed the Uber app and corresponding website. Uber does not provide transportation services and does not own or operate vehicles. In California, Uber licenses the Uber app and related services to Rasier-CA, a TNC. Rasier-CA uses the Uber digital platform to connect users to independent, third-party providers.

1

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

collected a separate fee, itemized on receipts as an "airport fee toll," when users of the Uber app arranged for transportation to or from certain California airports, including San Francisco International Airport, Los Angeles International Airport and Sacramento International Airport.  *See* SAC ¶¶ 5-8.  Plaintiff alleges that Uber represented that the airport fee toll was simply a pass through, and that the fees were being charged by and paid to the airports.  Plaintiff further alleges that during the relevant time period, however, California airports did not charge ridesharing drivers any such taxes, fees, tolls, or surcharges for airport pick-ups or drop-offs, and that the fee went directly to the drivers. (*See* SAC ¶¶ 46-47.)  Although Uber has acknowledged that users paid surcharges for trips to or from certain California airports, it denies that Uber or Rasier-CA misrepresented the nature of the fees or that users were charged the fees wrongfully.

The proposed settlement was reached after exhaustive arm's length negotiations between experienced counsel on both sides.  (*See* Declaration of Todd M. Schneider In Support Of Motion To Preliminarily Approve Proposed Settlement; (2) Certify A Settlement Class; (3) Approve A Proposed Plan For Notice; And (4) Schedule Final Settlement Hearing ("Schneider Decl.") at ¶ 7).)   Business records indicate that approximately $1,785,912.85 in Unremitted California Airport Fee Tolls (as defined by Settlement Agreement at 8, subparagraph ii, attached hereto as Exhibit C) were charged to users of the Uber app during the relevant time period.  (*See* Horton Declaration at ¶ 10.) The proposed settlement is remarkable in that Uber has agreed to credit or otherwise refund all settlement class members for 100% of those fees.  Moreover, Uber has agreed to do so without requiring settlement class members to complete or submit a claim form. (Schneider Declaration at ¶ 8.)  In the event that, due to the obsolescence of information it has about a particular user, Uber is not able to credit or otherwise that user, Uber will distribute the aggregate of those users' settlement payments to the National Consumer Law Center and East Bay Community Law Center as cy pres recipients.  (*Id. at* ¶ 12.)  In

addition, Uber agrees to separately pay the settlement administration costs and the Plaintiff's and settlement class's attorney fees. (*Id. at* ¶¶ 13-14.) As additional relief, Uber agrees that neither it nor its affiliates will describe passenger fees for trips to or from California airports as "airport fee tolls" or in like manner as fees paid to California airports unless the fees are remitted to the airport. (*Id.*)

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate so that notice of the proposed settlement should be given to class members, and a hearing scheduled to consider final settlement approval. The Court is not required at this point to make a final determination. As stated by the *Manual for Complex Litigation*, Fourth, § 13.14 at 173: First, the judge reviews the proposed settlement preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing. (*Id.*)

The proposed settlement will provide substantial benefits to class members, meets the criteria for notice, and is well within the range of what might be approved as fair, reasonable, and adequate.

## II. DESCRIPTION OF THE LITIGATION

Plaintiff used the Uber app to obtain transportation to San Francisco International Airport. He was charged $27.57 for the trip to the airport, including a $4.00 airport fee. The electronic invoice itemized its charges as follows:

UBER

JULY 23, 2014

**$27.57**

Thanks for choosing Uber, Vamsi

25% off uberX this summer!

Golden Gate
Oakland
San Francisco
Alameda
280
Daly City
San Francisco B
South San Francisco
Pacifica
Millbrae
Google
Map data ©2014 Google

07:05am
1460 Clayton Street, San Francisco, CA

07:28am
Airport Access Road, San Francisco International Airport (SFO), San Francisco, CA

| CAR | MILES | TRIP TIME |
|---|---|---|
| uberX | 14.62 | 00:22:47 |

FARE BREAKDOWN

| | |
|---|---|
| Base Fare | 3.00 |
| Distance | 21.93 |
| Time | 6.83 |
| **Subtotal** | **$31.76** |
| SFO Airport Fee Toll (?) | 4.00 |
| Safe Rides Fee (?) | 1.00 |
| 25% off uberX this summer! | -9.19 |

CHARGED
[redacted] • 2006

**$27.57**

(SAC, ¶ 39.)

Plaintiff alleges that Uber systematically charged airport related fees to passengers who were picked up or dropped off at California airports, but did not remit the fees to any airports. (SAC, ¶ 1.) The Complaint seeks restitution of all airport related fees collected wrongfully by Uber, as well as injunctive relief. (*Id.* at ¶¶ 1-15.)

Uber denies that it misleadingly described or wrongfully charged the California airport fee tolls at issue, and on February 17, 2015, Uber filed a demurrer to each cause of action. Plaintiff researched and drafted a brief in opposition to Uber's demurrer, and as the hearing date approached, the parties began discussing potential settlement. The parties discussed settlement constructs over a period of approximately 45 days. Eventually the parties reached the proposed settlement now before the Court.

Mr. Tadepalli respectfully submits that the proposed settlement is especially advantageous to the settlement class because Uber agrees to credit or otherwise refund all unremitted California airport fee tolls to members of the settlement class, separately pay for the cost of administering the settlement, and also separately pay for the settlement class's attorney fees, subject to the Court's approval, so that the settlement class does not bear the cost of those fees. In addition, Uber agrees to the injunctive relief sought by Plaintiff here. In sum, the proposed settlement is within the range of reasonableness, and therefore warrants preliminary approval.

## III. THE SETTLEMENT AGREEMENT

The proposed settlement includes the following key terms and consideration:

(1) Uber has identified from business records that the total amount of Unremitted California Airport Fee Tolls at issue is approximately $1,785,912.85;

(2) Uber agrees to credit or otherwise refund each class member 100% of the aggregate amount of the California airport fee tolls each class member paid during the class period;

(3) Uber agrees to distribute to the National Consumer Law Center and East Bay Community Law Center as *cy pres* recipients the aggregate amount of all unremitted California airport fee tolls it is unable to credit or otherwise refund to class members following diligent efforts to do so;

(4) Uber agrees to pay all settlement administration costs;

(5) Uber agrees to separately pay Plaintiff's counsel's fees and reasonable costs subject to the limitations established in the Settlement Agreement;

(6) Uber agrees to provide Plaintiff's counsel with a reasonable opportunity to corroborate all data provided on class size, airport fees collected, and other matters necessary to support the settlement; and

(7) Plaintiff agrees, on behalf of himself and the class, to release and forever discharge Uber and its subsidiaries and affiliates from any and all claims, damages, or remedies which may arise in whole or part from the collection of the airport related fees at issue in this lawsuit.

(8) Kurtzman Carson Consultants, an experienced independent claims administrator, will serve as the Settlement Administrator and will ensure that all class members receive notice of the settlement and their respective settlement awards.

(Settlement Agreement, attached as Exhibit C).

## IV. THE PROPOSED SETTLEMENT IS WITHIN AN APPROPRIATE RANGE FOR PRELIMINARY APPROVAL

### A. The Standard for Preliminary Approval of Settlement Agreement

Rule 23(e) provides that before a class action may be settled, notice of the proposed settlement must be given in the manner directed by the Court. Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed settlement deserves preliminary approval and then after notice is given to class members, whether final approval is warranted. *Nat'l Rural Telecomms. Corp. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004), citing *Manual for Complex Litigation* at § 30.41. The initial assessment can be made on the basis of information already known to the Court, and if necessary, may be supplemented by briefs, motions, or informal presentations by the settling parties. *Id.*

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. *Hopson v. Hanesbrands, Inc.* No. CV-08-0844, 2008 WL 3385452, at *2 (N.D. Cal. Aug. 8, 2008). Preliminary approval permits notice to be given to the class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to final approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078-80 (N.D. Cal. 2007); *see also Manual for Complex Litigation*, at §13.14. The proposed settlement falls squarely within the range of reasonableness warranting notice apprising class members of the proposed settlement and establishing a hearing on final approval.

**B.     The Settlement Agreement Resulted from Arm's Length Negotiations**

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.  *See Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002).  Here, the presumption applies because the proposed settlement is the result of lengthy and hard-fought negotiations between Plaintiff's and Uber's counsel over the course of approximately 45 days.  (*See* Schneider Decl. at ¶ 7.)

**C.     The Proposed Settlement Falls Within the Range of Approval**

An evaluation of any settlement is tempered by the recognition that any compromise involves concessions from all parties; indeed, the very essence of a settlement is yielding of absolutes and an abandoning of highest hopes.  *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 619, (9th Cir. 1982).  While Plaintiff expected to defeat Uber's demurrer, or anticipated motion to dismiss the removed SAC, and also expected to certify a class, those outcomes were not certain.  Uber was likely to assert that Plaintiff sued the wrong party, that individual issues prevailed as to whether class members read and relied upon Uber's descriptions of the airport fee tolls at issue, how they interpreted those descriptions, and whether those descriptions, especially if unseen, were material to their decisions to use the Uber app.  Those issues would also have resurfaced at summary judgment and trial.  Considering all the circumstances, including the delay in relief to the class that would result from litigating Plaintiff's claims through trial, coupled with the full restitution and injunctive relief offered to the class by the proposed settlement, the proposed settlement is not merely within the range of fairness, it is at the very top of the range.

**D.     Plaintiff's Counsel and Uber's Counsel Support the Proposed Settlement**

Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Counsel on both sides are experienced class action litigators and familiar with the factual and legal issues of this case. (*See* Schneider Decl. ¶ 5.) Plaintiff's counsel urge preliminary approval of the proposed settlement based upon their experience, knowledge of the strengths and weaknesses of the case, likely recovery at trial and on appeal, and all the other factors considered in evaluating proposed class action settlements. (*Id.* at ¶¶ 10-11.) The proposed settlement will enable all parties to avoid the significant costs that would attach should this case to proceed to trial. Uber's counsel has also agreed that the proposed settlement is fair and has agreed to obtain their best efforts to obtain approval of the settlement. (*See* Exhibit C at ¶ 29.)

## V. THE PROPOSED PLAN FOR CLASS NOTICE IS APPROPRIATE

Rule 23(c)(2) states that "[i]n any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must fairly apprise prospective class members of the terms of the proposed settlement and of their options with respect to the settlement. *Eisen v. Carlisle & Jacquelin*, 447 U.S. 156, 174 (1974). Following preliminary approval, the Settlement Administrator or Uber will send each class member a summary notice to the most recent email address the member provided to Uber, which will include: contact information for proposed class counsel; the address for the settlement website; instructions on how to access the Court's docket via PACER; the date of the final approval hearing; and instructions on how to object or opt-out of the settlement. (*See* Exhibits A and B.)

The proposed forms of notice here, among other things, describe in plain English the nature of the litigation; sets forth the definition of the class; and describes class members' rights under Rule 23 and the proposed settlement agreement. Plaintiff's proposed forms of notice is attached hereto as Exhibit A and B. In addition, the proposed

8

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

notice describes the settlement in detail and provides contact information for Plaintiff's counsel. The proposed notice will also disclose the date, time, and place of the final settlement hearing, and the procedures for commenting on the settlement and appearing at the hearing.

Electronic mail is the best notice practicable in this case because it provides actual notice of the settlement to all class members using the method by which Uber communicates with its users. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (finding delivery of class notice by mail to class members satisfies Rule 23 and due process). Uber maintains a list of email addresses for all class members. It communicates with class members via email, including by sending receipts by email. (Horton Declaration ¶ 11.) Moreover, approximately 92% of the settlement class used the Uber app within the twelve months before the filing of this motion, strongly indicating that the settlement class members use the email addresses associated with their Uber accounts. (*Id.*) Uber does not maintain mailing street addresses for class members or typically communicate with class members by U.S. mail. As such, all class members will receive the best practicable notice of the proposed settlement by email.

The notice plan also complies with the government agency notice requirements of the Class Action Fairness Act. 28 U.S.C. § 1715. Within ten days of the filing of this Motion, the Settlement Administrator will serve the proper notice upon the required officials. (*See* Exhibit A.) The Settlement Administrator will also provide notice to the offices of the District Attorneys of San Francisco and Los Angeles counties, both have which have requested notice. (*Id.*)

In sum, the content and manner of distributing the proposed notice amply satisfies Rule 23's requirements.

## VI. THE CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

Certification of a settlement class is appropriate provided that the class meets each of the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods Inc. v.* Windsor, 521 U.S. 591, 620-21 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).  Before a case may be certified as a class action, the following requirements of Rule 23(a) must be satisfied:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

### A. The Class is Sufficiently Numerous

To meet the numerosity requirement, the plaintiff need only show that it is difficult or inconvenient to join all class members.  Meeting an arbitrary numerical limit is not required. *Bates v. UPS*, 204 F.R.D. 440, 444 (N.D. Cal. 2001).  Whether joinder is impracticable is the key. *Jordan v. County of L. A.*, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, *County of L. A. v. Jordan*, 459 U.S. 810, 103 S. Ct. 35, (1982).  Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 3d § 1762 at 176 (3d ed. 2005) (noting plaintiffs need only show that joinder would be difficult or inconvenient). "In light of prevailing precedent, the difficulty inherent in joining as few as 40 Class Members should raise a presumption that joinder is impracticable." Herbert Newberg & Alan Conte, *Newberg on Class Actions*, §3.5 at 233-234 (4th ed. 2002).

Here, Uber has acknowledged that the class consists of approximately 355,619 individuals.  (*See* Horton Declaration ¶ 10.)  Accordingly, a presumption of numerosity

attaches. The current settlement posture makes it impracticable to require all class members to file joinders, or proceed in separate actions simply to obtain benefits that can easily be obtained in this action.

**B. Common Questions of Law or Fact Exist**

To maintain a class action, there must be "questions of law or fact common to the class. . ." Rule 23(a)(2). Generally, courts have liberally construed the commonality prerequisite, requiring only that the named plaintiff shares at least one question of fact or law with the grievances of the proposed class. *See e.g. Hanlon*, 150 f.3d at 1019 (holding "all questions of fact and law need not be common to satisfy the rule"). Shared legal disputes "militate in favor of class certification, since [they] must be resolved for the class as a whole. *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 405 (C.D. Cal. 2008). This case presents numerous common questions of both law and fact, including whether Uber and/or Rasier systematically and wrongfully collected airport related fees from passengers picked up or dropped off at California airports. The core questions of law and fact are common to Plaintiff and the class. In sum, Rule 23(a)(2) is plainly satisfied here.

**C. Plaintiff's Claims Are Typical of those of the Class**

Typicality requires that the Plaintiff be a member of the class he seeks to represent and possess the same interest and suffer the same injury as other class members. As with commonality the Ninth Circuit interprets this requirement liberally: representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Hanlon*, 150 F.3d at 1020; *see also DeBoer v. Mellon Mortg. Co*, 64 F.3d 1171, 1174 (8th Cir. 1995) (noting the typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff").

Here, Plaintiff's claims arise from Uber's alleged wrongful collection of airport related fees from passengers picked up or dropped off at California airports that were described as an airport fee toll. (SAC ¶¶ 1-5.) His claims are typical because he was

subject to the same conduct, suffered the same damages as other class members, and he does not seek any unique or personalized claims.

**D. Plaintiff is an Adequate Class Representative**

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625. The factors relevant to a determination of adequacy are: (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *Id*.

There are no conflicts between the Plaintiff and class members. The Plaintiff is adequate as demonstrated by the fact that he has brought this case against Uber as a class action, and is willing to settle the case only on a class-wide basis. Additionally, Plaintiff's counsel are experienced class action attorneys, who have qualified as lead class counsel in class actions pending in courts throughout California, and across the country. (Schneider Decl. ¶ 5.) Plaintiff's counsel have a proven track record in the prosecution of class actions; they have successfully litigated and tried many major class action cases. (*Id.*)

**E. The Requirements of Rule 23(b)(3) are also Satisfied**

Rule 23(b)(3) authorizes class certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions, and a class action is superior to other available means of adjudication. This case easily meets Rule 23(b)(3)'s requirements.

**F. Common Legal and Factual Questions Predominate**

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust law." *Amchem*, 521 U.S. at 625. In this case, Uber allegedly wrongfully collected airport related fees from its passengers at California airports that were represented as fees to be paid to those airports. This central issue predominates over any individual issue that theoretically might exist.

### G. A Class Action is the Superior Means to Adjudicate Plaintiff's Claims

The second prong of Rule 23(b)(3) is essentially satisfied by the settlement itself. As explained in *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Id.* at 620. Thus, any manageability problems that may have existed here — and Plaintiff knows of none — are eliminated by the settlement.

## VII. THE COURT SHOULD SCHEDULE A FINAL SETTLEMENT HEARING

Plaintiff requests that the Court set an expedited schedule for the final settlement approval process. Plaintiff and the class will benefit from an expedited settlement approval process. An expedited process will preserve the time value of money in connection with the significant sums waiting to be claimed by Plaintiff and the class. Further, an expedited settlement process is consistent the Rule 1 which encourages courts and parties to interpret all other rules in a manner that secures the "just, speedy, and inexpensive determination of every action and proceeding."

Plaintiff proposes the following schedule:

- November 27, 2015 – Deadline
- December 10, 2015 – Preliminary Fairness Hearing
- February 8, 2016 – Deadline to Opt Out of Class or to Object to Class Settlement
- February 18, 2016 – Plaintiff To File Final Motion To Approve Settlement
- March 10, 2016 – Final Settlement Fairness Hearing

## VIII. CONCLUSION

For all these reasons, Plaintiff respectfully requests the Court to grant this unopposed motion and enter an order: (1) preliminarily approving the proposed settlement of this class action on the terms set forth in the settlement agreement submitted

herewith; (2) approving the proposed notice of settlement as set forth in the proposed notice submitted herewith; (3) certifying a settlement class; and (4) scheduling a final settlement hearing.

Dated:  November 20, 2015

        SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP

        /s/ Todd M. Schneider
Todd M. Schneider (Bar No. 158253)
2000 Powell Street, Suite 1400
Emeryville, California  94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

BAILEY & GLASSER LLP
John Roddy (Pro Hac Vice)
Elizabeth Ryan (Pro Hac Vice)
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

JAILE & TRIFILO LLC
Pedro Jaile
188 Summer Street
East Boston, Massachusetts 02128
Telephone: (617) 561-3777
Facsimile: (617) 561-0300

Attorneys for Plaintiff and the Proposed Class

**ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)**

I, Todd M. Schneider, am the ECF user whose ID and password are being used to file this STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories listed have concurred in this filing.

Dated: November 20, 2015 /s/ Todd M. Schneider

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2015, I electronically transmitted the attached document to the Clerk of the Court using ECF System for filing and served on the following person(s) in the manner indicated below:

| | | |
|---|---|---|
| FENWICK & WEST LLP | ■ | by CM/ECF Electronic Mail |
| Laurence F. Pulgram | □ | by Fascimile Transmission |
| Tyler G. Newby | ■ | by First Class Mail |
| 55 California Street, 12th Floor | □ | by Hand Delivery |
| San Francisco, CA 94104 | □ | by Overnight Delivery |

/s/Clarence Williams