# Exhibit C

## Settlement Agreement

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (SBN 158253)
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com

Attorney for Plaintiff
[additional counsel listed on signature page]

Laurence F. Pulgram (CSB No. 115163)
lpulgram@fenwick.com
Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
Annasara G. Purcell (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:      415.281.1350

Attorneys for Defendant
UBER TECHNOLOGIES, INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VAMSI TADEPALLI,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No.: 3:15-cv-04348-MEJ<br><br>**STIPULATION OF SETTLEMENT AND RELEASE** |

This Stipulation of Settlement and Release (the "Agreement" or "Settlement") is entered by Plaintiff Vamsi Tadepalli individually and on behalf of the Settlement Class as defined below, and Defendant Uber Technologies, Inc. ("Uber") subject to and conditioned upon the approval of the Court. Plaintiff, Settlement Class Counsel (as defined below), and Uber hereby stipulate and agree that, in consideration of the promises and covenants in this Agreement and upon entry by the Court of a Final Approval Order (as defined below), all claims of Plaintiff and the Settlement Class Members (as defined below) against Uber in the captioned action shall be settled, compromised, and released upon the terms and conditions contained herein.

## RECITALS

WHEREAS, on or about December 3, 2014, Plaintiff filed an action styled as *Tadepalli v. Uber Technologies, Inc.*, Case No. CGC-14-543032, in Superior Court for San Francisco County (the "December 2014 Complaint") on behalf of himself and a class of similarly situated individuals alleging that Uber had wrongfully charged fees to users of its service who had used Uber's mobile application (the "Uber App") to request and pay for ground transportation to or from San Francisco International Airport;

WHEREAS, the December 2014 Complaint alleged that from June of 2010 through the filing date of the December 2014 Complaint, Uber had described such fees as an "Airport Fee Toll" that SFO charged to ground transportation service providers. The December 2014 Complaint further alleged that the fees charged to such users of the Uber App had, in fact, not been paid to SFO. Based upon these allegations, Plaintiff asserted causes of action for, *inter alia*, breach of contract, breach of the duty of good faith and fair dealing, fraudulent concealment, conversion, an accounting, constructive trust, unjust enrichment and restitution, and violation of California Business & Professions Code, Section 17200. The December 2014 Complaint sought relief in the form of compensatory, statutory and punitive damages, as well as an injunction and other forms of equitable relief on behalf of Plaintiff and a class consisting of California residents who had been charged such fees for trips to or from SFO;

WHEREAS, on or about January 12, 2015, Plaintiff filed a First Amended Complaint in the Superior Court for San Francisco County adding a cause of action for violation of the California Consumer Legal Remedies Act, California Civil Code, Section 1750 (the "First Amended Complaint");

WHEREAS, on or about February 18, 2015, Uber noticed for hearing on July 30, 2015 its demurrer to the First Amended Complaint. In its demurrer, Uber argued that Plaintiff lacked statutory standing under California's Unfair Competition Law and Consumer Legal Remedies Act, because he had not alleged he relied on any unfair, fraudulent or unlawful practice. Uber further argued that Plaintiff had not stated a cause of action for breach of contract or breach of the duty of good faith and fair dealing, because the First Amended Complaint did not allege any

contractual provisions Uber had breached. To the contrary, Uber argued, it had performed the terms of the only contract identified in the First Amended Complaint – the Uber Terms and Conditions. Uber similarly argued that the First Amended Complaint failed to allege necessary elements to state a cause of action under the remaining common law claims.

WHEREAS, on or about July 2, 2015, the parties stipulated to continue the hearing date on Uber's demurrer from July 30, 2015 to August 28, 2015;

WHEREAS, on or about August 14, 2015, Plaintiff filed an unopposed motion in the Superior Court for San Francisco County requesting leave to file a Second Amended Complaint (the "Second Amended Complaint"). The Second Amended Complaint asserted similar allegations as the December 2014 Complaint, but sought relief on behalf of a nationwide class of individuals who had been charged Unremitted Airport Fee Tolls (as defined below) when they had used the Uber App to request and pay for ground transportation to all airports in California for which Uber had charged such fees. The Second Amended Complaint alleged that Uber had charged its users such fees for trips to or from at least California airports including, but not limited to, SFO, John Wayne Airport, Los Angeles International Airport, and Sacramento International Airport;

WHEREAS, on or about September 11, 2015, Plaintiff's motion for leave to file its Second Amended Complaint was granted, and that complaint was filed in the Superior Court for San Francisco County on or about September 21, 2015;

WHEREAS, on or about September 22, 2015, Uber removed the Second Amended Complaint to the United States District Court for the Northern District of California;

WHEREAS, at all times, Uber has denied and continues to deny that it committed any wrongful act, violation of law or breach of duty as alleged in the Action (as defined below), that Plaintiff suffered any injury and that any of Plaintiff's claims can be certified for class treatment outside the settlement context. Uber maintains that it has meritorious defenses on both the merits and in opposition to class certification of the claims alleged in the Action and is prepared to defend all aspects of the Action. Nonetheless, taking into account the costs, distraction from its business, uncertainty, and risks inherent in litigation, Uber has determined that is desirable that

the Action be fully, finally, and forever resolved, and settled upon and subject to the terms and conditions set forth in this Agreement, and subject to the final approval of the Court. This Agreement is a compromise, and neither it nor any related documents or negotiations shall be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Uber, or any of the Released Parties, with respect to any liability, wrongdoing, or damage whatsoever;

WHEREAS, Plaintiff believes that the claims asserted in the Action against Defendant have merit, would have been certified for class treatment, and would have resulted in judgment after trial in Plaintiff's favor. Nonetheless, Plaintiff and Class Counsel recognize and acknowledge that Defendant has raised factual and legal defenses in the Action that present a risk that Plaintiff will not be able to certify a class or prevail on the merits. Plaintiff and Class Counsel also have taken into account the uncertain outcome and risks of litigation, especially in complex actions, as well as the difficulties and delays inherent in such litigation. Plaintiff therefore believes that it is desirable that the Action be fully, finally, and forever resolved, and settled upon and subject to the terms and conditions set forth in this Agreement, and subject to the final approval of the Court;

WHEREAS, Plaintiff has obtained confirmatory discovery in the form of a declaration and summary data from Uber's business records that identify: (1) the number of Settlement Class Members; (2) the number of Settlement Class Members who have used the Uber app to arrange for transportation in the twelve months preceding the date on which the parties entered this Agreement; (3) and the aggregate amount of Unremitted California Airport Fee Tolls (as defined below) charged to Settlement Class Members from June 1, 2010 to October 31, 2015;

WHEREAS, based on their evaluation, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to resolve, and settle the above-captioned action upon and subject to the terms and conditions set forth in this Agreement.

NOW THEREFORE, IT IS HEREBY AGREED, BY AND BETWEEN the undersigned Parties, that, pursuant to the following terms and conditions, this Action shall be settled, the

claims asserted by Plaintiff shall be fully and forever released, and the Action shall be dismissed with prejudice, subject to and conditioned upon the approval of the Court:

**DEFINITIONS**

1.    As used in this Settlement Agreement, the following terms shall have these meanings:

a.    "Action" means the above-captioned lawsuit.

b.    "Active Account" means an Uber Account (as defined below) that has been used by a Class Member within the twelve (12) months preceding the date of this Agreement to request and pay for transportation from a transportation provider.

c.    "Agreement" or "Settlement Agreement" or "Settlement" means this Stipulation of Settlement and Release.

d.    "CAFA Notice" means the notice to be sent by Defendant or the Settlement Administrator to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) days after the Motion for Preliminary Approval is filed with the Court. CAFA Notice will include notice to the Offices of the District Attorneys of the city and county of San Francisco, California and Los Angeles, California.

e.    "California Airport Fee Toll" means a fee collected by Uber on behalf of third party transportation providers, where such fee was identified as an "airport fee toll" or was similarly described as a fee charged by the airport.

f.    "Class Counsel" means Schneider Wallace Cottrell Konecky Wotkyns LLP, Bailey & Glasser LLP, and Jaile & Trifilo LLC.

g.    "Class Member" means any Person who is included within the definition of the Settlement Class and who does not validly and timely request exclusion from the Settlement Class, under the Notice Plan.

h.    "Class Notice" means the Court-approved written notice of this proposed settlement and the Final Approval Hearing, consisting of the Email Notice and Website Notice (as defined below).

i.      "Class Notice Date" means the date that the Class Notice is first disseminated, as certified by the Settlement Administrator.

j.      "Class Period" means the time between June 1, 2010 and the date of this Agreement.

k.      "Court" means the United States District Court for the Northern District of California.

l.      "Defendant" means and includes Uber, as defined below.

m.      "Dormant Account" means an Uber Account (as defined below) that has not been used by a Class Member to request and pay for transportation within the twelve (12) months preceding October 31, 2015.

n.      "Effective Date" means either: (a) the date of the Final Approval Order of this Agreement by the Court, if no objections are timely filed; (b) the expiration date of the time for filing notice of any appeal from the Final Approval Order by the Court if any timely objections are filed but no appeal is filed; or (c) if an appeal is filed, the latest of (i) the date of final affirmance of that Final Approval Order, (ii) the expiration of the time for a petition for writ of certiorari to review the Final Approval Order if affirmed and, if the certiorari is granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order that has the effect of confirming the Final Approval Order.

o.      "Email Notice" means the notice of the Settlement and Final Approval Hearing substantially in the form attached hereto as Exhibit A.

p.      "Final Approval" means the date the Court enters the Final Approval Order granting final approval to the Settlement and determines the fees, costs and expenses awarded to Class Counsel and the Service award (defined below) to Plaintiff.

q.      "Final Approval Motion" or "Motion for Final Approval" means Plaintiff's motion seeking final approval of this Agreement.

r.    "Final Approval Order" means the order and judgment the Court enters upon finally approving the Settlement.

s.    "Final Judgment" means the judgment dismissing with prejudice all claims asserted against Defendant, which shall be entered following the Final Approval Hearing.

t.    "Notice Program" means the notice program set forth and described in paragraphs 15-16 below, which program shall be effected following issuance of the Preliminary Approval Order by the Court.

u.    "Objection Deadline" means the date 60 days after the Class Notice Date.

v.    "Opt-Out Deadline" means the date 60 days after the Class Notice Date.

w.    "Order of Final Approval" means the order issued by the Court in response to the Final Approval Motion following the Final Approval Hearing, granting final approval of this Agreement.

x.    "Parties" means the Named Plaintiff and the Defendant.

y.    "Payment Account" means the PayPal account, credit card or debit card account linked to each Class Member's Uber account.

z.    "Plaintiff" or "Named Plaintiff" means Vamsi Tadepalli.

aa.    "Preliminary Approval" means the date of the Preliminary Approval Order.

bb.    "Preliminary Approval Motion" or "Motion for Preliminary Approval" means the Named Plaintiff's motion seeking preliminary approval of this Agreement, which shall include a copy of this Settlement Agreement.

cc.    "Preliminary Approval Order" means the Court's Order preliminarily approving this Agreement without material change.

dd.    "Released Claims" refers to all claims released by Releasing Parties as described in paragraphs 22-26 below.

ee.    "Released Parties" means the Settlement Administrator, the Defendant and each and all of their past, present, and future parents, subsidiaries, affiliated companies and corporations, including but not limited to Rasier, LLC and Rasier-CA, LLC, and each and all of their past, present, and future directors, officers, managers, employees, general partners, limited

partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each and all of their executors, successors, assigns, and legal representatives.

ff.     "Releasing Parties" means Plaintiff and all Class Members who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives.

gg.     "Settlement Administrator" means Kurtzman Carson Consultants LLC which, if approved by the Court, shall serve as the Settlement Administrator for the settlement of the Action and shall also be responsible for providing notice to the class of this Settlement, and of the preliminary and final approval thereof, as set forth herein.

hh.     "Settlement Amount" means the total of Unremitted California Airport Fee Tolls charged to the Settlement Class during the Class Period. Uber warrants and represents that the Settlement Amount is approximately $1,785,912.85.

ii.     "Settlement Class" means all persons who, since June 1, 2010, used their Uber Accounts to arrange for transportation from a transportation provider to or from an airport in California and paid an Unremitted California Airport Fee Toll. Each such person shall be referred to as a "Settlement Class member."

jj.     "Settlement Payment" means a sum equal to 100% of the aggregate Unremitted California Airport Fee Tolls paid by a Class Member during the Class Period.

kk.     "Uber" means Uber Technologies, Inc. and each and all of its past, present, and future parents, subsidiaries, affiliated companies and corporations, including but not limited to Rasier, LLC and Rasier-CA, LLC, and each and all of their past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each and all of their executors, successors, assigns, and legal representatives.

ll.   "Uber Account" means the account or accounts an individual registered to use the Uber application to request and pay for transportation provided by third party transportation providers.

mm.   "Uber Payment Account" means the credit card, debit card or PayPal account linked to a Class Member's Uber Account.

nn.   "Uber's Counsel" means Fenwick & West LLP.

oo.   "Unremitted California Airport Fee Toll" means any portion of a California Airport Fee Toll that (i) Uber collected on behalf of a Transportation Network Company ("TNC") provider that was not remitted to an airport, or (ii) Uber collected on behalf of a Transportation Charter Party ("TCP") that exceeded the amount that the TCP driver was obligated to remit to the airport.

pp.   "Website Notice" means the Notice of Class Action Settlement as approved by Class Counsel, Uber's Counsel and the Court in its Preliminary Approval Order. The Website Notice will be provided to Settlement Class Members on a website to be hosted by the Settlement Administrator (as further provided for in Section 15(c) below), which shall be substantially in the form attached hereto as Exhibit B.

## CERTIFICATION OF SETTLEMENT CLASS

2.   The Parties to this Agreement agree that this Action shall be certified and proceed as a class action solely for purposes of settlement under Fed. R. Civ. P. 23(e), in accordance with the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3), consisting of all Settlement Class members, with the Named Plaintiff as the Settlement Class representative and Class Counsel as counsel for the Settlement Class.

3.   This Agreement and certification of the Settlement Class is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement or its Exhibits, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as, any admission of the validity of any claim or any fact alleged by Plaintiff in this Action or in any other pending or subsequently filed action or proceeding of any wrongdoing, fault, violation of law, or liability of any kind on the part of any of the Defendant, or admission by any of the

Defendant of any claim or allegation made in this Action or in any other action or proceeding. This Agreement shall, however, be admissible in any other action or proceeding to enforce the terms of the Agreement.

4.     Any certification of a conditional, preliminary, or final Settlement Class pursuant to the terms of this Agreement shall not constitute, and shall not be construed as, an admission on the part of any of the Defendant that this Action, or any other proposed or certified class action, including, but not limited to *Cullinane, et al. v. Uber Technologies, Inc.*, Civ. No. 14-14750, U.S.D.C., D. Mass, with respect to transportation in or around Massachusetts, is appropriate for class treatment pursuant to Fed. R. Civ. P. 23 or any similar state or federal class action rule or statute outside the settlement context. This Agreement is without prejudice to the rights of the Defendant to: (1) oppose final certification in this Action should this Settlement not be approved or implemented for any reason; (2) oppose certification in any other proposed or certified class action; or (3) use the certification of this Settlement Class to oppose certification of any other proposed class action arising out of the issues and claims that are asserted herein.

5.     In the event this Stipulation is terminated pursuant to its own terms, or a Final Approval of the Settlement for any reason does not occur, the Settlement Class defined herein shall cease to exist and the Action shall proceed as if no Settlement Class or Agreement had ever existed, and Defendant shall not have waived any and all rights they might have to oppose class certification, and to defend themselves against the allegations of Plaintiff's Complaint.

## SUBMISSION FOR PRELIMINARY APPROVAL

6.     Following execution of this Agreement, the Plaintiff, at a time to be mutually agreed-upon by the Parties, through Class Counsel shall submit this Agreement to the Court by way of a Motion for Preliminary Approval.

## RELIEF TO THE CLASS

## MONETARY RELIEF

7.     <u>Distribution of Settlement Payments.</u> Uber shall distribute or cause to be distributed the Settlement Payment to each Class Member as follows:

a.      Active Accounts. Within 30 days after the Effective Date, Uber shall add a credit to each Active Account in the amount of the Settlement Payment due to the Class Member associated with the Active Account.  The account credit will be applied automatically to offset and reduce charges for Active Account Class Members' future uses of the Uber service to request and pay for transportation until the Settlement Payment credit is exhausted.

i.      If a Class Member with an Active Account does not use the account credit within 365 days, Uber will remove the account credit from the Class Member's Uber account and attempt to issue a credit in the same amount to the Payment Account associated with that member's Uber account. If it is not feasible for Uber to credit an Active Account Class Member's Payment Account, Uber will follow the procedures in sections b.i. through b.iv. below for mailing checks to such members.

b.      Dormant Accounts. Within 30 days after the Effective Date, Uber shall attempt to issue a credit in the amount of the Settlement Payment due to the Class Member's Payment Account associated with each Dormant Account.  If it is not feasible for Uber to credit a Dormant Account Class Member's Payment Account, the Settlement Payment will be distributed as follows:

c.      Within 60 days after the Effective Date, Uber shall provide a data file to the Settlement Administrator identifying all Dormant Accounts for which Uber was unable to issue a credit to the associated Payment Account.  The data file shall identify the name and mobile phone number associated with each such Class Member's Uber Account, and the aggregate Unremitted California Airport Fee Tolls each such Class Member paid during the Class Period. The Settlement Administrator shall use such mobile phone numbers for the sole purpose of conducting reverse lookups of such Class Members' addresses to which checks in the amount of the Settlement Payments will be mailed.

i.      Within 90 days of the Effective Date, the Settlement Administrator will send Settlement Payments to Dormant Account Class Members whose Payment Accounts Uber was not able to credit. Such payments shall be sent in the form of a postcard check via first

class mail, with the following phrase appearing prominently thereon: "**Settlement Payment Pursuant to Class Action Settlement Approved by the Court.**"

ii. Remailing of Returned Checks. Any Settlement Payment checks that are returned as non-deliverable with a forwarding address shall be re-mailed by the Settlement Administrator to such forwarding address within five (5) business days. To the extent that any such checks are returned as non-deliverable without a forwarding address, the Settlement Administrator shall conduct reasonable searches in no event costing in excess of the amount of the Settlement Payment to the intended recipient to locate valid address information for the intended recipients of the Settlement Payments, and shall, within five (5) business days, re-mail the checks, as applicable, to any Class Members for whom new address information is identified. The Settlement Administrator will only re-mail returned checks once.

iii. Time Period To Accept Payment. Dormant Account Class Members shall have 120 days from the date of their Settlement Payments to cash their checks. Dormant Account Class Members may request new checks to be issued by the Settlement Administrator during this time period, if they lose or misplace their original check; however, the time period for cashing the check will be the same as the original time period set forth above.

8. Unclaimed Monies. Any checks that are not cashed within the time period set forth in paragraph 7 of this Settlement Agreement and any Settlement Payments that otherwise cannot be distributed as set forth in paragraph 7 shall be paid to National Consumer Law Center and the East Bay Community Law Center as *cy pres* recipients. No unclaimed monies will revert to Defendant.

9. Final Accounting. No later than thirty (30) days after all Settlement Payments are issued to Class Members or distributed to the *cy pres* recipient, the Settlement Administrator shall provide a final accounting to the Parties. The Settlement Administrator shall also provide declarations to the Parties to be filed with the Court, concerning the status of the administration process, at the request of Class Counsel or Defendant at any time.

10. No Claims Arising From Distributions. No person shall have any claim against any of the Defendant, the Named Plaintiff, the Settlement Class, Class Counsel, or the Settlement

Administrator based on distributions or payments made in accordance with this Settlement Agreement.

### OTHER PAYMENTS

11.    <u>Service Award to Named Plaintiff</u>. Subject to the Court's approval, the Named Plaintiff shall receive a service award not to exceed $2,500 for his time and efforts in bringing and prosecuting this matter. Within ten (10) business days after the Effective Date, Uber shall pay by wire transfer to Class Counsel's client trust account the service award as determined by the Court.

12.    <u>Attorneys' Fees, Costs, and Expenses</u>. At the same time Class Counsel files its motion for Final Approval, it will also move for Attorneys' Fees, Costs, and Expenses in accordance with Fed. R. Civ. P. 23(h). Class Counsel's Motion for Attorneys' Fees, Costs, and Expenses is to be considered separately by the Court from its consideration of the fairness and adequacy of this Settlement Agreement, and any order regarding this separate motion will not affect or delay the approval of this Settlement Agreement. Attorneys' fees to be requested by Class Counsel and awarded by the Court will not exceed (i) Class Counsel's lodestar, or (ii) 10% of the Settlement Amount, whichever is less. Costs and expenses to be sought and awarded will be the actual recoverable costs and expenses incurred by Class Counsel. Defendant will not object to Class Counsels' request for attorneys' fees, costs, and expenses, so long as it is consistent with this paragraph. If, but only if, Class Counsel is required to expend extraordinary efforts during the settlement approval process due to acts of third parties, Class Counsel will be entitled to and may seek additional fees exceeding 10% of the Settlement Amount, provided that the total fee award sought by Class Counsel will not exceed $200,000 under any circumstances. These amounts will compensate counsel, as Class Counsel may determine in its sole discretion, for work already performed and all of the work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining dismissal. Within ten (10) business days after the later of (i) the Effective Date or (ii) the final expiration of the time to appeal, or if an appeal is taken, after final resolution of all appeals and rights of review therefrom,

the Court's final ruling on Class Counsel's Motion for Attorneys' Fees and Costs, Uber shall pay by wire transfer to Class Counsel the attorneys' fees, costs and expenses approved by the Court consistent with this Agreement. The attorneys' fees and recoverable costs awarded by the Court shall be the only fees for which Defendant is responsible for services provided for on behalf of the class. The provisions in this Settlement Agreement concerning Class Counsel's fees are made in reliance on Uber's representation that the Settlement Amount is between $1,700,000 and $1,800,000 USD. If the Settlement Amount increases beyond $1,800,000 USD, Class Counsel will be entitled to and may seek fees up to the amount of Class Counsel's lodestar or 10% of the Settlement Amount.

13.    <u>Costs of Notice Provision and Settlement Administration.</u> All fees and expenses of the Settlement Administrator shall be paid by Uber. The Parties agree to cooperate in good faith during the settlement administration process.

## **INJUNCTIVE RELIEF**

14.    Uber will cease collecting and not in the future collect from users of the Uber app tolls or additional fees charged by California airports for trips to or from any airport unless the fee is remitted to the airport.  Nothing will prohibit Uber from assessing surcharges or other added fees for trips to or from California airports or other destinations, provided that those surcharges and fees are not described as "tolls" that are charged by airports if the fees are not remitted to the airports.

## **NOTICE OF SETTLEMENT**

15.    Subject to Preliminary Approval, notice of this Settlement shall be provided to Class Members as follows:

a.    <u>Identification of Class Members.</u> Within 15 days of Preliminary Approval, Uber shall provide the Settlement Administrator and Class Counsel with a data file listing Settlement Class members and identifying, for each Settlement Class member, the name and email address associated with the Settlement Class member's Uber Account, and the aggregate Unremitted California Airport Fee Tolls each Class Member paid during the Class Period.

b.      Email Notice to Class Members. Within 30 days of Preliminary Approval, the Settlement Administrator will send or cause to be sent the Email Notice, substantially in the form attached hereto as Exhibit A, to the email address associated with each Settlement Class member's Uber account. The Email Notice shall include a prominently displayed hypertext link to the Settlement Website, with clear language directing Class Members to the website via the link. For emails that result in a bounce-back or are otherwise undeliverable, an attempt will be made to re-send the Email Notice once prior to the Notice Date.  Uber represents and warrants that email is the primary means by which Uber communicates with its users, and that notice by email is calculated to reach 90% of Settlement Class Members.

c.      Website Notice. Effective on the Class Notice Date, the Settlement Administrator shall make active a website that provides relevant forms and court documents that Class Members may read and download, principally: (i) the Website Notice; (ii) the Settlement Agreement; (iii) the Court's Preliminary Approval Order; and (iv) opt-out forms; and (v) Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses, when it becomes available. The website shall be developed, hosted and maintained by the Settlement Administrator through the Effective Date.

## OPT-OUTS AND OBJECTIONS

16.      Requests for Exclusion: Both the Email Notice and the Website Notice will provide that Settlement Class members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement ("opt-out"), postmarked or submitted electronically on the website, by the Opt-Out Deadline. Such written request for exclusion must contain the Settlement Class member's name, address, mobile phone number associated with the Settlement Class member's Uber account, and email address associated with the Settlement Class member's Uber account requesting exclusion, and be personally signed, or if via website, electronically signed, by the Settlement Class member who seeks to opt out. No opt-out request may be made on behalf of a group of Settlement Class members. The opt-out request must be sent via the website or by mail to the Settlement Administrator and must be timely submitted via the website or postmarked as set forth above. The website submission record or

postmark date of the mailing envelope shall be the exclusive means used to determine whether an opt-out has been timely submitted. Any Settlement Class member who requests exclusion from (*i.e.,* opts out of) the Settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon.

17.    Objections: The Class Notice will provide that any Settlement Class members who wish to object to the Settlement Agreement must file with the Court, and serve upon Class Counsel, a written statement of objection postmarked by the Objection Deadline. The Notice of Objection must state the basis for the objection and include any supporting papers. Such objection must contain the name, address, telephone number, and email address of the Settlement Class Member making the objection, and be signed by the Class Member. Any objection and supporting papers must be timely filed, either by mailing them to the Clerk of the United States District Court for the Northern District of California, or by filing them in person at any location of the United States District Court for the Northern District of California, except that any objection made by a Settlement Class member represented by counsel must be filed through the Court's Case Management/Electronic Case Filing (CM/ECF) system under the cause number for the Action.  Any objection not filed under the Court's CM/ECF system under the cause number for the Action must be mailed to Class Counsel and Defendant's Counsel on the same day that it is filed with the Court, which shall be determined exclusively by the postmark date. Settlement Class members who fail to make objections in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

## **FINAL APPROVAL AND JUDGMENT ORDER**

18.    Final Approval Motion. At least twenty-one (21) days before the Final Approval Hearing, Plaintiff shall file a motion requesting that the Court grant final approval of the Settlement Agreement, with Class Counsel filing a memorandum of points and authorities in support of the motion, and addressing any timely submitted objections to the Settlement.

19.    Matters To Be Considered at Final Approval Hearing. At the Final Approval Hearing, the Court will consider and determine whether this Agreement should be approved,

whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, whether Class Counsel's motion for attorneys' fees and costs should be approved and in what amount, and whether a Judgment finally approving the Settlement should be entered.

20.     This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement; approves the Settlement Class under Fed. R. Civ. P. 23 and its relevant subparts; and:

a.     Finds that the Class Notice satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

b.     Finds that the Agreement is fair, reasonable and adequate to the Class, that each Class Member (except those who submit a timely and valid request for exclusion from the Class) will be bound by this Agreement;

c.     Dismisses on the merits and with prejudice all claims asserted against Defendant; and

d.     Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Settlement.

## **TERMINATION OF AGREEMENT**

21.     The Named Plaintiff, on behalf of the Class Members, by Class Counsel, and Defendant, by Defendant's counsel, shall each have the right to unilaterally terminate this Agreement by providing written notice of their election to do so to all other Parties hereto within ten (10) business days of: (a) the Court's refusal to grant Preliminary Approval of this Agreement; (b) the Court's refusal to grant Final Approval of this Agreement; or (c) the date upon which the Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court. The above notwithstanding, the Parties agree that should the Court modify the Agreement, or condition preliminary or final approval of the Agreement on modification, then the Parties will, within the above-indicated period, meet and confer in a good faith attempt to reach agreement and preserve the Agreement.

22.     If this Settlement Agreement is terminated, it will be deemed null and void *ab initio*. In that event: (i) the Preliminary Approval Order and all of its provisions will be vacated; (ii) the Action will revert to the status that existed before the Settlement Agreement's execution date; and (iii) no term or draft of this Settlement Agreement, or any part or aspect of the Parties' settlement discussions, negotiations, or documentation (including any declarations and briefs filed to support the motion for preliminary or final approval) will have any effect or be admissible into evidence, for any purpose or any other proceeding.

## **RELEASES**

23.     Upon the entry of the Final Order and Judgment, and in consideration of the benefits and other consideration set forth above, the Releasing Parties will be deemed to have fully, finally, and forever released, relinquished and discharged against each of the Released Parties and all persons acting through, under, or in concert with each such Released Party, all claims in the Action. Specifically, the Releasing Parties shall be deemed to have released any and all past, present or future claims, causes of actions, suits, petitions, demands in law or equity, or any allegations of liability or damages, debts, contracts, agreements, obligations, promises, entitlement to restitution, unjust enrichment, disgorgement, attorneys' fees, costs, interest, or expenses that have been, may be, or could be asserted in the Action, any pre-removal complaint filed in a California state court, any subsequent amended complaint filed in this or any related case, or in any other action, court, arbitration, tribunal or administrative body, regardless of whether those claims are based on federal, state or local law, statute, ordinance, regulations, contract, common law, or any other source, that are based upon, arise out of, or are related to or connected with, directly or indirectly, in whole or in part, the facts, activities, or circumstances alleged in the Second Amended Complaint, or any claims asserted against Defendant relating to this Action or Uber's alleged charging or collecting of Airport Toll Fees to Class Members for trips to or from California airports that were not remitted to the airport. This release shall not affect any claims made by putative class members in *Cullinane, et al. v. Uber Technologies, Inc.*, Civ. No. 14-14750, U.S.D.C., D. Mass, with respect to transportation in or around Massachusetts.

24.   <u>Waiver of Known and Unknown Claims.</u> The general releases in this Agreement extend to claims the Releasing Parties do not know or suspect to exist in their favor, which, if known by them, would have materially affected their decisions to enter into this Agreement. The Parties, including the Releasing Parties, understand and acknowledge that they are familiar with California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon entry of the Final Order and Judgment, the Releasing Parties shall be deemed to have, and by operation of this Agreement shall have, waived and relinquished any rights they may have under California Civil Code section 1542 or any other statute or common law principle with a similar effect on all releases set forth in this Agreement. In connection with such waiver and relinquishment, the Releasing Parties acknowledge that they are aware that, after executing this Agreement, they or their legal counsel or agents may discover Released Claims or facts in addition to, or different from, those which they now know or believe to exist with respect to the subject matter of this Agreement or the Parties hereto, but that it is Plaintiff's intention hereby to fully, finally, and forever settle and release all of the Released Claims, whether known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore may have existed against the Released Parties.

25.   <u>Dismissal with Prejudice.</u> Upon entry of the Final Order and Judgment, the Consolidated Action shall be dismissed in its entirety with prejudice as to Uber.

26.   <u>Covenant Not to Sue.</u> Upon execution of this Agreement by all Parties, each Class member automatically and without further action or notice covenants not to commence, maintain or assert against Defendant, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or any other alleged class or any other person or entity, any of the Released Claims. Pursuant to the terms of this Agreement, each Class member is enjoined from bringing or otherwise pursuing any Released Claims against Defendant or Defendant Parties in any forum.

27.     The Parties are deemed to agree and acknowledge that Paragraphs 23-26 together constitute an essential term of this Agreement and will be included in the Final Approval Order entered by the Court.

## MISCELLANEOUS

28.     Acknowledgment. Each of the Parties acknowledges and represents that such Party: (a) has fully and carefully read this Agreement prior to execution; (b) has been fully apprised by counsel of the legal effect and meaning of the terms of this Agreement; (c) has had the opportunity to undertake whatever investigation or inquiry is necessary or appropriate in connection with this Agreement; (d) has been afforded the opportunity to negotiate any and all terms of this Agreement; and (e) is executing this Agreement voluntarily and free from any undue influence, coercion, or duress of any kind.

29.     Agreement To Cooperate. The Parties and their respective counsel will cooperate with each other in good faith and use their best efforts to effect the implementation of the Agreement and shall provide any additional documentation or assurances necessary to do so. In the event that the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate this Agreement, the Parties may seek the assistance of the Court to resolve such disagreement after meeting and conferring with each other in good faith to resolve the dispute.

30.     Authority. Each person executing this Settlement Agreement on behalf of any of the Parties represents that such person has the authority to execute this Agreement.

31.     Binding Upon Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties.

32.     Construction. The Parties believe that the terms of this Agreement are a fair, adequate, and reasonable settlement of this Action, and have arrived at this Settlement Agreement in arms-length negotiations taking into account all relevant factors, present and potential. This Agreement has been drafted jointly by counsel for the Parties. Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties.

33.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed copies of this Agreement and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

34.    <u>Defense Fees and Costs</u>. Defendant's own attorneys' fees and legal costs and expenses incurred in the Action (and in the state court proceedings initiated by the Named Plaintiff) shall be borne by Defendant; from Defendant's separate funds and not from the Settlement Payment.

35.    <u>Entire Agreement</u>. This Agreement constitutes the entire fully-integrated agreement among the Parties relating to the Settlement. All prior or contemporaneous agreements, understandings and statements, whether oral or written, and whether by a party or its counsel, are merged herein. No oral or written representations, warranties or inducements of any kind have been made to any Party concerning this Agreement, nor relied upon by any party, other than as set forth herein.

36.    <u>Limitation of Agreement</u>. This Agreement may not be relied upon for any purpose by, and does not create any rights in, any person(s) or entity other than Named Plaintiff, the Class Members, and the Defendant.

37.    <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of California and, to the extent applicable, federal law.

38.    <u>Headings and Captions</u>. The headings and captions in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any term of this Agreement. Each term of this Agreement is contractual and is not merely a recital.

39.    <u>No Oral Modifications</u>. This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest. No rights hereunder may be waived except in writing. No oral amendment or modification shall be permitted or effective.

40.     No Waiver. The failure of any party to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any party thereafter to enforce that provision or each and every provision. No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

41.     Notices. Unless otherwise agreed in writing, all notices to the Parties or counsel required by the Agreement shall be made in writing and communicated by first class mail and email to the following:

If to Vamsi Tadepalli or Class Counsel:

Michael McKay
Schneider Wallace Cottrell Konecky Wotkyns LLP
7702 East Doubletree Ranch Road, Suite 300
Scottsdale, AZ 85258
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
mmckay@schneiderwallace.com

If to Uber Technologies, Inc. or its counsel:

Laurence F. Pulgram
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:     415.281.1350
lpulgram@fenwick.com

Any party may change the address to which requests, demands, claims, or other communications hereunder are to be delivered by giving the other Parties notice in the manner herein set forth.

42.     Time Periods. The time periods and/or dates described in this Agreement with respect to the giving of Notice and the hearings are subject to approval and change by the Court with the approval of the Parties, or by agreement of the Parties.

43.     Exclusive Remedy and Jurisdiction of the Court. This Agreement shall be the sole and exclusive remedy for any and all Released Claims. Upon entry of the Final Order and

1   Judgment, each Class Member may not initiate, assert or prosecute any Released Claims against

2   any Released Party. If any Class Member who does not opt-out in accordance with the procedures

3   set forth in this Settlement Agreement attempts to prosecute an action asserting a Released Claim,

4   counsel for any affected Party shall forward this Agreement and the Final Order and Judgment to

5   such Class Member and advise the Class Member of the releases provided under this Settlement

6   Agreement. This Court shall retain exclusive and continuing jurisdiction over the Consolidated

7   Action and all Parties and Class Members to interpret and enforce this Settlement Agreement. No

8   provision in this Agreement shall preclude any action to enforce the terms of this Agreement.

9           44.   <u>No Admission of Wrongdoing.</u> Defendant denies that it violated the law with

10  respect to the claims asserted against it in the Action, or otherwise, and maintains that it has

11  meritorious defenses to each of those claims. Defendant believes that further litigation would be

12  protracted, burdensome, expensive, and distracting from its business. Thus, Defendant has

13  concluded that it is desirable and beneficial to settle the Action on the terms and conditions set

14  forth in this Settlement.

15

16  Dated:   November 13, 2015            By: _____

17                                          Vamsi Tadepalli, individually and on behalf of
                                            the Settlement Class

18

19  Dated:   November 13, 2015            UBER TECHNOLOGIES, INC.

20

21                                       By: _____

22

23

24                                       Its: ___General Counsel___

25

26

27

28

**APPROVED AS TO FORM BY COUNSEL**

Dated:   November 20, 2015                    FENWICK & WEST LLP


                                             By: /s/ Tyler G. Newby
                                                 Laurence F. Pulgram
                                                 Tyler G. Newby
                                                 Annasara G. Purcell

                                             Attorneys for Defendant
                                             UBER TECHNOLOGIES, INC.


Dated:   November 20, 2015                    SCHNEIDER WALLACE COTTRELL
                                             KONECKY WOTKYNS LLP


                                             By: /s/ Todd M. Schneider
                                                 Todd M. Schneider
                                                 Michael C. McKay
                                                 SCHNEIDER WALLACE COTTRELL
                                                 KONECKY WOTKYNS LLP
                                                 2000 Powell Street, Suite 1400
                                                 Emeryville, CA 94608
                                                 Telephone:       415.421.7100
                                                 Facsimile:       415.421.7105

                                                 John Roddy
                                                 Elizabeth Ryan
                                                 BAILEY & GLASSER LLP
                                                 99 High Street, Suite 304
                                                 Boston, MA 02110
                                                 Telephone: 617.439.6730
                                                 Facsimile: 617.951.3954

                                                 Pedro Jaile
                                                 JAILE & TRIFILO LLC
                                                 188 Summer Street
                                                 East Boston, MA 02128
                                                 Telephone: 617.561.3777
                                                 Facsimile: 617.561.0300

                                                 Attorneys for Plaintiff
                                                 VAMSI TADEPALLI

**ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)**

I, Todd M. Schneider, am the ECF user whose ID and password are being used to file this STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories listed have concurred in this filing.


Dated:  November 20, 2015                    /s/ Todd M. Schneider_____