UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAMSI TADEPALLI, | Case No. 15-cv-04348-MEJ |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| UBER TECHNOLOGIES, INC., | Re: Dkt. No. 12 |
| Defendant. | |

## INTRODUCTION

In this putative class action, Plaintiff Vamsi Tadepalli ("Plaintiff") brings claims against Defendant Uber Technologies, Inc. ("Uber") on behalf of a class of Uber passengers who allegedly paid Uber drivers any tax, fee, toll, or surcharge for airport pick-ups or drop offs when no such fees existed. Second Am. Compl. ("SAC") ¶ 9, Notice of Rem., Ex. B, Dkt. No. 1. Through an unopposed Motion for Preliminary Approval of Settlement, Plaintiff seeks an order (1) preliminarily approving the proposed settlement of this class case on the terms set forth in the parties' proposed Stipulation of Settlement and Release ("Settlement Agreement"), attached to the Motion as Exhibit C (Dkt. No. 12-3)[1]; (2) approving their proposed notice of settlement ("notice"); (3) certifying a settlement class; and (4) scheduling a final approval and fairness hearing. Dkt. No. 12. Having carefully considered the Motion, the proposed Settlement Agreement and all supporting documents, and the relevant legal authority, the Court **PRELIMINARILY APPROVES** the Settlement Agreement for the reasons set forth below.

---

[1] On December 15, 2015, the parties submitted an amended release to replace paragraph 23 of the Settlement Agreement. Dkt. No. 22. The amended version narrows the scope of the release given by the Settlement Class. As this Order adopts the amended version, the parties shall file a fully execute Amended Stipulation of Settlement and Release incorporated the revised paragraph 23.

# BACKGROUND

## A.     Factual Background

Uber operates a "ride sharing" service that transports customers for a fee.  SAC ¶ 1.  Uber passengers summon Uber vehicles using a cell phone application or "app," and pay the fare through the same app.  *Id.*  Uber does not provide transportation services directly and does not own or operate vehicles.  Mot. at 1 n.1.  Instead, it licenses the Uber app and related services to Raiser-CA, a transportation network company ("TNC"), which uses the Uber digital platform to connect users to independent, third-party providers.  *Id.*

On July 23, 2014, Plaintiff used the Uber app to obtain transportation to San Francisco International Airport ("SFO").  SAC ¶ 37.  He paid $27.57 for the trip to the airport, including a $4.00 "SFO Airport Fee Toll."  *Id.* ¶¶ 38-39.  Plaintiff alleges he was informed before he paid for his trip that a portion of the fees charged by Uber were "supposedly being assessed by SFO and Uber was simply acting as a pass through for SFO."  *Id.* ¶ 40.  Uber collected this separate fee(itemized on receipts as an "airport fee toll") when users of the Uber app arranged for transportation to or from certain California airports, including SFO, Los Angeles International Airport, and Sacramento International Airport.  *Id.* ¶¶ 5-8.  However, Plaintiff alleges that during the relevant period, California airports did not charge ridesharing drivers any such taxes, fees, tolls, or surcharges for airport pick-ups or drop-offs, yet Uber "has imposed the fictitious Airport fees and tolls upon tends of thousands of passengers."  *Id.* ¶¶ 46-47.  Although Uber has acknowledged that users paid surcharges for trips to or from certain California airports, it denies that Uber or Raiser-CA misrepresented the nature of the fees or that users were charged the fees wrongfully.  Mot. at 2.

On December 3, 2014, Plaintiff filed this proposed class action against Uber in the Superior Court of the State of California for San Francisco County.  Notice of Rem., Ex. A.  He seeks to represent a class of all consumers who, from June 1, 2010 through November 20, 2015, were picked up or dropped off by an Uber transportation provider partner at a California airport, and paid a charge to Uber designated as an airport fee toll that was not remitted to the airport.  SAC ¶ 48; Settlement Agreement ¶ 1(j).  He filed the operative SAC on September 21, 2015,

claiming a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., breach of contract, breach of good faith and fair dealing, unjust enrichment and restitution, accounting, conversion, fraudulent concealment, and constructive trust. Uber removed the case to this Court on September 22, 2015, after which Plaintiff filed the present Motion for Preliminary Approval of Settlement on November 20, 2015.

**B.    Settlement Terms**

Uber's business records indicate that approximately $1,785,912.85 in unremitted California airport fee tolls were charged to 355,619 users of the Uber app during the relevant period. *See* Settlement Agreement ¶ 1(hh); Horton Decl. ¶ 10, Dkt. No. 14; Schneider Decl. ¶ 8, Dkt. No. 13. Under the terms of the Settlement Agreement, Uber has agreed to credit or otherwise refund all settlement class members for 100% of those fees. Settlement Agreement ¶¶ 1(hh), (jj). Uber has also agreed to do so without requiring settlement class members to complete or submit a claim form. *Id.* ¶ 7; Schneider Decl. ¶ 9. Uber will also "cease collecting and not in the future collect from users of the Uber app tolls or additional fees charged by California airports for trips to or from any airport unless the fee is remitted to the airport." Settlement Agreement ¶ 14.

1.    The Settlement Class

The "Settlement Class" is defined as "all persons who, since June 1, 2010, used their Uber Accounts to arrange for transportation from a transportation provider to or from an airport in California and paid an Unremitted California Airport Fee Toll. Each such person shall be referred to as a 'Settlement Class member.'" *Id.* ¶ 1(ii). The Parties agree this action should be certified and proceed as a class action solely for purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23(e). *Id.* ¶ 2. The "Class Period" is defined as the time between June 1, 2010 and the date of the Settlement Agreement, November 20, 2015. *Id.* ¶ 1(j).

2.    Distribution of Settlement Payments

Uber agrees to distribute the settlement payment to each Settlement Class member as follows. First, if a user has an active Uber account (defined as "an Uber Account . . . that has been used by a Class Member within the twelve (12) months preceding the date of this Agreement to request and pay for transportation from a transportation provider"), Uber shall "add a credit to

each Active Account in the amount of the Settlement Payment due to the Class Member associated with the Active Account." *Id.* ¶¶ 1(b), 7(a). The account credit will be applied automatically to offset and reduce charges for Active Account Class Members' future uses of the Uber service until the Settlement Payment credit is exhausted. *Id.* ¶ 7(a). If a Class Member with an Active Account does not use the account credit within 365 days, Uber will remove the account credit from the Class Member's Uber Account and attempt to issue a credit in the same amount to the Payment Account (defined as "the PayPal account, credit card or debit card account linked to each Class Member's Uber account") associated with that member's Uber account. *Id.* ¶¶ 1(y), 7(a)(i).

If it is not feasible for Uber to credit an Active Account Class Member's Payment Account, Uber shall attempt to mail checks to such members, through the Settlement Administrator.[2] *Id.* ¶ 7(a)(i), (c). All such Class Members shall have 120 days from the date of their Settlement Payments to cash their checks. *Id.* ¶ 7(c)(iii). Any checks that are not cashed within this period and any Settlement Payments that otherwise cannot be distributed in this manner shall be paid to National Consumer Law Center ("NCLC") and the East Bay Community Law Center ("EBCLC") as cy pres recipients. *Id.* ¶ 8. No unclaimed monies will revert to Uber. *Id.*

    3.   <u>Other Payments</u>

       a.   *Service Award*

The Settlement Agreement calls for a Service Award to Plaintiff, separate from the airport fees and not to exceed $2,500, for his time and efforts in bringing and prosecuting this matter. *Id.* ¶ 11.

       b.   *Attorneys' Fees and Costs*

The Settlement Agreement also permits an award of attorneys' fees and costs, separate from the airport fees, to Class Counsel, the law firms of Schneider Wallace Cottrell Konecky Wotkyns LLP, Bailey & Glasser LLP, and Jaile & Trifilo LLC. *Id.* ¶ 12. At the time Class

---

[2] Under the terms of the Settlement Agreement, Kurtzman Carson Consultants LLC shall serve as the Settlement Administrator for the settlement of the Action and shall also be responsible for providing notice to the class of this Settlement, and of the preliminary and final approval thereof. *Id.* ¶ 1(gg).

Counsel files its motion for Final Approval, it will also move for attorneys' fees and costs in accordance with Rule 23(h), which shall be considered separately by the Court from its consideration of the fairness and adequacy of the Settlement Agreement. *Id.* Attorneys' fees will not exceed (i) Class Counsel's lodestar, or (ii) 10% of the Settlement Amount, whichever is less. *Id.* Costs and expenses to be sought and awarded will be the actual recoverable costs and expenses incurred by Class Counsel. *Id.* However, if Class Counsel is required to expend "extraordinary efforts" during the settlement approval process due to acts of third parties, Class Counsel will be entitled to seek additional fees exceeding 10% of the Settlement Amount, "provided that the total fee award sought by Class Counsel will not exceed $200,000 under any circumstances." *Id.*

### 4. Injunctive Relief

The Settlement Agreement also provides for injunctive relief whereby "Uber will cease collecting and not in the future collect from users of the Uber app tolls or additional fees charged by California airports for trips to or from any airport unless the fee is remitted to the airport." *Id.* ¶ 14. Uber may still assess "surcharges or other added fees" for trips to or from California airports or other destinations, provided those surcharges and fees are not described as "tolls" that are charged by airports if the fees are not remitted to the airports. *Id.*

### 5. Notification of Settlement

If the Court grants preliminary approval of the Settlement Agreement, notice shall be provided to Class Members as follows:

> a. **Identification of Class Members**. Within 15 days of Preliminary Approval, Uber shall provide the Settlement Administrator and Class Counsel with a data file listing Settlement Class members and identifying, for each Settlement Class member, the name and email address associated with the Settlement Class member's Uber Account, and the aggregate Unremitted California Airport Fee Tolls each Class Member paid during the Class Period.

> b. **Email Notice to Class Members**. Within 30 days of Preliminary Approval, the Settlement Administrator will send or cause to be sent the Email Notice, substantially in the form attached hereto as Exhibit A, to the email address associated with each Settlement Class member's Uber account. The Email Notice shall include a prominently displayed hypertext link to the Settlement

United States District Court
Northern District of California

Website, with clear language directing Class Members to the website via the link. For emails that result in a bounce-back or are otherwise undeliverable, an attempt will be made to re-send the Email Notice once prior to the Notice Date. Uber represents and warrants that email is the primary means by which Uber communicates with its users, and that notice by email is calculated to reach 90% of Settlement Class Members.

c.    Website Notice. Effective on the Class Notice Date [defined below], the Settlement Administrator shall make active a website that provides relevant forms and court documents that Class Members may read and download, principally: (i) the Website Notice; (ii) the Settlement Agreement; (iii) the Court's Preliminary Approval Order; and (iv) opt-out forms; and (v) Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses, when it becomes available. The website shall be developed, hosted and maintained by the Settlement Administrator through the Effective Date [defined below].

*Id.* ¶ 15.

6.    Opt-Outs and Objections

Both the Email Notice (Mot., Ex. A) and the Website Notice (Mot., Ex. B) (collectively, "Class Notice") will provide that Settlement Class members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement ("opt-out"), postmarked or submitted electronically on the website, within 60 days of the class notification, as defined below. *Id.* ¶ 16. The opt-out request must contain the Settlement Class member's name, address, mobile phone number and email address associated with the Settlement Class member's Uber Account, and be personally signed, or if via website, electronically signed, by the Settlement Class member who seeks to opt out. *Id.* Any Settlement Class member who opts out of the Settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement. *Id.*

The Class Notice will provide that any Settlement Class members who wish to object to the Settlement Agreement must file a written statement of objection postmarked within 60 days of the class notification. *Id.* ¶¶ 1(i), 17. The Notice of Objection must state the basis for the objection and include any supporting papers. *Id.* ¶ 17. It must contain the name, address, telephone number, and email address of the Settlement Class member making the objection, and be signed by the Settlement Class member. *Id.* Settlement Class members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed

6

from making any objection (whether by appeal or otherwise) to the Settlement Agreement. *Id.*

### 7. Final Approval and Judgment Order

The Settlement Agreement is subject to issuance by the Court of a Final Approval Order that: (1) grants final approval of the Agreement; (2) finds the Class Notice satisfies the requirements of due process and Rule 23(e)(1); (3) finds the Agreement is fair, reasonable and adequate to the Class such that each Settlement Class member (except those who submit a timely and valid request for exclusion from the Class) will be bound by the Agreement; (4) dismisses on the merits and with prejudice all claims asserted against Uber; and (5) retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement. *Id.* ¶ 20.

### 8. Releases

Upon entry of the Final Order and Judgment, the Settlement Agreement provides that all Class Members who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released, relinquished, and discharged all claims against the Settlement Administrator and Uber, and each and all of its past, present, and future parents, subsidiaries, affiliated companies and corporations "that are based upon, arise out of, or are related to or connected with, directly or indirectly, in whole or in part, the facts, activities, or circumstances alleged in the SAC against Defendant for Uber's alleged charging or collecting of Airport Toll Fees to Class Members for trips to or from California airports that were not remitted to the airport." *Id.* ¶¶ 1(ee), (ff), 23; *see also* Dkt. No. 22 (Am. ¶ 23). The release does not affect any claims that could be made by Class Members related to the charging of Safe Ride Fees. *Id.* ¶ 23. This release extends to claims the Class Members "do not know or suspect to exist in their favor, which, if known by them, would have materially affected their decisions to enter into this Agreement." *Id.* ¶ 24.

## LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, a

class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Courts generally employ a two-step process in evaluating a class action settlement. First, the court must assess whether a class exists. *Staton*, 327 F.3d at 952 (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). This level of attention "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Second, the court must determine whether the proposed settlement "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Where the parties reach a settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotations and citation omitted). The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal quotations and citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs*, 955 F.2d at 1276.

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (internal quotations and citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether

the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness.  *Id.*  Courts do not have the ability to "delete, modify, or substitute certain provisions" because the settlement "must stand or fall in its entirety."  *Id.*

If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *2 (N.D. Cal. Mar. 26, 2014).

## DISCUSSION

### A.    Class Certification

The Court has discretion to certify a class action under Rule 23.  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).  *Amchem Prods.*, 521 U.S. at 614.  The four prerequisites are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)-(4).  If these requirements are satisfied, the Court then examines whether the plaintiff satisfies one of the requirements of Rule 23(b).  Plaintiff seeks certification under Rule 23(b)(3), which is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.  Fed. R. Civ. P. 23(b)(3).

The parties have stipulated to the certification of a Settlement Class, defined as: "all persons who, from June 1, 2010 through November 20, 2015, used their Uber Accounts to arrange

9

for transportation from a transportation provider to or from an airport in California and paid an Unremitted California Airport Fee Toll."  Settlement Agreement ¶ 1(ii).

1.  Rule 23(a)

a.  *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  No specific number is required, although there is a presumption that a class with more than 40 members is impracticable to require joinder.  *Ries v. Ariz. Bevs. U.S. LLC, Hornell Brewing Co.*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." (citation omitted)).

The numerosity requirement is satisfied here as the class contains 355,619 users of the Uber app during the relevant time period.  Horton Decl. ¶ 10.

b.  *Commonality*

Rule 23(a)(1) requires some "questions of fact and law which are common to the class." To satisfy this requirement, the claims must "depend upon a common contention" such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  But this does not necessitate that "every question in the case, or even a preponderance of questions, is capable of class wide resolution."  *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013).  "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Id.* (citing *Wal-Mart Stores*, 131 S. Ct. at 2556). "[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims."  *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013); additional citation omitted)).

This case is based on common questions of both law and fact, including whether Uber and/or Raiser systematically and wrongfully collected airport related fees from passengers picked up or dropped off at California airports.  The core questions of law and fact are common to

Plaintiff and the Settlement Class members.  Thus, Rule 23(a)(2) is satisfied here.

### c.     Typicality

Rule 23(a)(3) requires that the representative party's claim be "typical of the claim . . . of the class." Fed. R. Civ. P. 23(a)(3).  "'Under this rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those absent class members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Typicality is met here: Plaintiff's claims arise from Uber's alleged wrongful collection of airport related fees from passengers picked up or dropped off at California airports that were described as an airport fee toll.  SAC ¶¶ 1-5.  His claims are typical because he was subject to the same conduct as other Settlement Class members, suffered the same damages, and he does not seek any unique or personalized claims.  Accordingly, the Court finds Plaintiff satisfies Rule 23(a)(3)'s typicality requirement.

### d.     Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Due process concerns are central to this determination: "[A]bsent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citation omitted).  Two questions must be considered in this determination: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*  The Court finds Plaintiff meets these requirements.

First, there is no evidence Plaintiff or his counsel have any conflicts of interest with other Settlement Class members.  Plaintiff brought this case against Uber as a class action, and he is willing to settle the case only on a class-wide basis.  Mot. at 12.  Second, based on the available

1    information, the Court is satisfied Plaintiff and his counsel have and will continue to vigorously

2    prosecute this action on behalf of the class.  Plaintiff shares the same interests as the absent class

3    members, namely, reimbursement for any fees that Uber allegedly wrongfully collected as airport-

4    related fees from its passengers at California airports that were represented as fees to be paid to

5    those airports.

6           Further, Plaintiff is represented by Schneider Wallace Cottrell Konecky Wotkyns LLP,

7    Bailey & Glasser LLP, and Jaile & Trifilo LLC experienced class action attorneys who have

8    qualified as lead class counsel in class actions pending in courts throughout California, and across

9    the country.  Schneider Decl. ¶ 5.  The record shows Plaintiff's counsel have a proven track record

10   in the prosecution of class actions as they have successfully litigated and tried many major class

11   action cases.  *Id.* (listing cases).  Accordingly, the Court finds both Plaintiff and his counsel are

12   adequate representatives.

                          *e.*      *Summary*

13          In light of the foregoing, the Court finds Plaintiff has satisfied Rule 23(a)'s four

14   prerequisites to maintaining a class action.  Accordingly, the Court turns to Rule 23(b) concerning

15   the type of class action that may be maintained.

16          2.      Rule 23(b)(3)

17          Plaintiff seeks to certify this proposed class under Rule 23(b)(3), which requires the Court

18   to find that: (1) "the questions of law or fact common to class members predominate over any

19   questions affecting only individual members," and (2) "a class action is superior to other available

20   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These

21   provisions are referred to as the "predominance" and "superiority" requirements.  *See Hanlon*, 150

22   F.3d at 1022-23.  The matters pertinent to these findings include: "(A) the class members' interests

23   in individually controlling the prosecution or defense of separate actions; (B) the extent and nature

24   of any litigation concerning the controversy already begun by or against class members; (C) the

25   desirability or undesirability of concentrating the litigation of the claims in the particular forum;

26   and (D) the likely difficulties in managing a class action."  *Id.*

27          The Court finds this case meets Rule 23(b)(3)'s requirements.  "Predominance is a test

readily met in certain cases alleging consumer or securities fraud or violations of the antitrust law." *Amchem*, 521 U.S. at 625. In this case, Uber allegedly wrongfully collected airport related fees from its passengers at California airports that were represented as fees to be paid to those airports. This central issue predominates over any individual issue that theoretically might exist. As to superiority, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Id.* at 620. Thus, any manageability problems that may have existed here are eliminated by the settlement. As such, the Court finds that Rule 23(b)(3)'s requirements are satisfied for purposed of this Motion.

### 3. Class Certification Summary

In view of the analysis above, the Court finds Plaintiff has satisfied the requirements of Rule 23(a) and (b)(3). Accordingly, for purposes of this Motion, the Court certifies the stipulated and proposed Settlement Class listed above and appoints Plaintiff's counsel as Class Counsel to effectuate the Settlement Agreement.

## B. Preliminary Fairness Determination

The Court now examines the Settlement Agreement to ensure it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As noted, when settlement occurs before formal class certification, settlement approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Nonetheless, "class action settlements do not need to embody the best result for preliminary approval." *In re Google*, 2014 WL 1266091, at *6. The preliminary approval stage is characterized "as an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted). "At this point, the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with 'proper deference to the private consensual decision of the parties' to reach an agreement rather

than to continue litigating." *Id.* (quoting *Hanlon*, 150 F.3d at 1027).

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Angell v. City of Oakland*, 2015 WL 65501, at *7 (N.D. Cal. Jan. 5, 2015) (quoting *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) and *In re Tableware*, 484 F. Supp. 2d at 1079)). "Closer scrutiny is reserved for the final approval hearing." *Harris*, 2011 WL 1627973, at *7.

### 1. Settlement Negotiations

Based on the parties' written submissions, the settlement in this case appears to be the product of serious, informed, non-collusive negotiations. The parties reached terms on the proposed settlement through a series of negotiations between experienced counsel that were conducted at arm's-length and in good faith over the course of 45 days. Mot. at 2; Schneider Decl. ¶ 7. "[S]ettlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (quoting Newberg on Class Actions § 11:41 (4th ed.)). Accordingly, the process by which the parties reached their settlement weighs in favor of preliminary approval.

### 2. The Presence of Obvious Deficiencies

The Court must next analyze whether there are obvious deficiencies in the Settlement Agreement. The Court finds none present here. First, as noted above, Uber's records indicate that approximately $1,785,912.85 in Unremitted California Airport Fee Tolls were charged to users of the Uber app during the relevant time period. Horton Decl. ¶ 10. Uber has agreed to credit or otherwise refund all settlement class members for 100% of those fees. Schneider Decl. ¶ 8. As additional relief, Uber agrees that it will cease charging and not in the future charge passengers fees for trips to or from California airports that are described as "airport fee tolls" or other fees to be paid to California airports unless the fees are remitted to the airport. *Id.* ¶ 9.

Second, Uber has agreed to credit or refund the fees without requiring Settlement Class

14

members to complete or submit a claim form.  Settlement Agreement ¶¶ 1(b), 7(a).  If a user has an active Uber Account, Uber shall "add a credit to each Active Account in the amount of the Settlement Payment due to the Class Member, which will be applied automatically to offset and reduce charges for Active Account Class Members' future uses of the Uber service until the Settlement Payment credit is exhausted.  *Id.* ¶ 7(a).  According to Uber, approximately 92% of the Settlement Class used the Uber service within the twelve months before Plaintiff filed this Motion.  Schneider Decl. ¶ 10.  If a Class Member with an Active Account does not use the account credit within 365 days, Uber will remove the account credit from the Class Member's Uber Account and attempt to issue a credit in the same amount to the Payment Account (defined above) associated with that member's Uber Account.  Settlement Agreement ¶¶ 1(y), 7(a)(i).  If it is not feasible for Uber to credit an Active Account Class Member's Payment Account, Uber shall attempt to mail checks to such members, through the Settlement Administrator.  *Id.* ¶ 7(a)(i), (c).  All such Class Members shall have 120 days from the date of their Settlement Payments to cash their checks.  *Id.* ¶ 7(c)(iii).

Third, any checks that are not cashed within this time period and any Settlement Payments that otherwise cannot be distributed in this manner shall be paid to NCLC and EBCC as cy pres recipients.  *Id.* ¶ 8.  *See Angell*, 2015 WL 65501, at *7 (the settlement agreement should "provide for a cy pres recipient or specify what would happen with the funds if a check is undeliverable or remains uncashed.")  The designated cy pres recipient appears to meet the requirements for preliminary approval.   As the Ninth Circuit recently reaffirmed, there must be "a driving nexus between the plaintiff class and the cy pres beneficiaries."  *Dennis*, 697 F.3d at 865 (internal quotations and citation omitted).  Thus, a "cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group 'too remote from the plaintiff class."  *Id.* (internal quotations and citation omitted).  However, "settling parties [need not] select a cy pres recipient that the court or class members would find ideal.  On the contrary, such an intrusion into the private parties' negotiations would be improper and disruptive to the settlement process."  *Lane*, 696 F.3d at 820-21.

Here, a driving nexus exists as to both cy pres beneficiaries.  The plaintiff class in this case

asserted claims under a variety of consumer protection statutes alleging that Uber's statements regarding the airport fee tolls were misleading. Both proposed cy pres recipients advocate for consumer rights under the types of consumer protection statutes at issue in this lawsuit, and provide consumer advocacy and education concerning consumer advertising and fees charged to consumers for a broad range of consumer products and services. Since 1997, the NCLC has received more than 400 cy pres awards. Pulgram Decl., Ex. A, "About the National Consumer Law Center," Dkt. No. 23-2. Since 1969, the NCLC has provided direct assistance to lawyers advancing consumer rights claims, advocates for policies and legislation that enhance consumer protections on both a state and national level, published an array of educational materials on consumer protection law, and provides training for consumer protection advocates. *Id.* at 1. The NCLC also provides training for consumer rights attorneys at its annual Consumer Rights Litigation Conference, and significant number of the attorneys who attend this conference are legal aid attorneys who represent low income consumers in consumer rights disputes. *Id.* at 4.

The EBCLC also advocates for consumer rights. It operates a weekly Consumer Justice & General Services Clinic through which low income consumers can seek advice and assistance relating to a variety of consumer protection issues. *See* Consumer Justice and General Clinic Services, http://ebclc.org/need-services/consumer-justice-general-clinic-services/ (last visited Dec. 17, 2015). The clinic also provides consumers with education about their rights under various statutes and conducts community outreach to increase awareness of these rights, including through the creation and publication of educational material. *Id.* EBCLC also conducts a Consumer Rights workshop twice each month, and provides a variety of multi-lingual clinics serving non-English speaking consumers in need of legal assistance. *See* Clinics for Consumers, http://ebclc.org/about/the-work/economic-security-opportunity/consumer-justice/clinics-for-consumers/ (last visited on December 17, 2015). EBCLC is currently the largest provider of free legal services in the East Bay. *See* About EBCLC, http://ebclc.org/about/ (last visited December 17, 2015).

In sum, both proposed cy pres recipients provide advocacy and educational services on the protection of consumer rights and enforcing statutes like those at issue in this case. As such, the

interests of absent class members are furthered by contribution to these organizations, and the organizations are not at all removed from the desired beneficiaries in the plaintiff class. Through this process, no unclaimed monies will revert to Uber. Settlement Agreement ¶ 8.

Fourth, the release is limited to claims "that are based upon, arise out of, or are related to or connected with, directly or indirectly, in whole or in part, the facts, activities, or circumstances alleged in the Second Amended Complaint against Defendant for Uber's alleged charging or collecting of Airport Toll Fees to Class Members for trips to or from California airports that were not remitted to the airport." *Id.* ¶ 23, *see also* Dkt. No. 22 (Am. ¶ 23). Additionally, the release does not include claims by class members who have opted out. *Id.* ¶ 1(ff). As the release is limited to claims arising from the events alleged in Plaintiff's SAC, the Court finds it is reasonable. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (internal quotation marks and citations omitted)); *Angell*, 2015 WL 65501, at *7 ("While the scope of the release in the revised settlement agreement is still broad, it is acceptable because the claims released are limited to those 'against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint.'").

Finally, although the Court is not approving the amount requested for attorneys' fees and costs at this stage, the Settlement Agreement provides that any such award to Class Counsel will not exceed (i) Class Counsel's lodestar, or (ii) 10% of the Settlement Amount, whichever is less. Settlement Agreement ¶ 12. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Thus, in awarding attorneys' fees under Rule 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). Here, given that Class Counsel's fee award will total no more than 10% of the Settlement Amount of the lodestar, whichever is lower, the Court finds Class

Counsel's proposed fees are reasonable at this stage and do not suggest against granting preliminary approval. *See id.* ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

Accordingly, the lack of obvious deficiencies in the Settlement Agreement weighs in favor of granting preliminary approval.

### 3.   Preferential Treatment

The third factor the Court considers is whether the Settlement Agreement provides preferential treatment to any class member. Having reviewed the proposed Agreement, the Court finds there is no preferential treatment to any class member. As noted above, Uber has agreed to credit or otherwise refund all Settlement Class members for 100% of the fees, and it has agreed to credit or refund the fees without requiring Settlement Class members to complete or submit a claim form. Accordingly, the proposed distribution of the settlement funds does not give undue preferential treatment to any class members.

While the Settlement Agreement authorizes an incentive award to Plaintiff of up to $2,500, "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977). Additionally, while the Court is not approving the amount of the incentive award at this stage, the Court notes the proposed incentive award is not outside the range of reasonableness. *See, e.g.*, *Angell*, 2015 WL 65501, at *8 (granting preliminary approval of settlement agreement authorizing $9,000 incentive award for each of eight class representatives); *Covillo v. Specialtys Cafe*, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (approving $8,000 incentive award); *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving $10,000 incentive award).

Accordingly, the Court finds this factor weighs in favor of preliminary approval.

### 4.   Reasonable Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval. To determine whether an agreement is fundamentally fair, adequate, and

reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Considering all the circumstances, the Court finds these factors all weigh in favor of preliminary approval of the proposed Settlement Agreement. Uber has agreed to credit or otherwise refund all Class Members for 100% of the fees, and a significant delay in relief to the Class would likely result from litigating Plaintiff's claims through trial. Plaintiff notes "Uber was likely to assert that Plaintiff sued the wrong party, that individual issues prevailed as to whether class members read and relied upon Uber's descriptions of the airport fee tolls at issue, how they interpreted those descriptions, and whether those descriptions, especially if unseen, were material to their decisions to use the Uber app." Mot. at 7. Given these outstanding issues, further litigation would involve considerable costs and a significant investment of time by the parties and their respective counsel, and would burden the resources of the Court. Class Counsel believes the proposed settlement is fair, reasonable, adequate, and is in the best interest of the class in light of all known facts and circumstances. Schneider Decl. ¶ 12. Finally, the Court has not received any reactions from Class Members at this time; the Court awaits those responses in conjunction with the Fairness Hearing. Thus, the balance of the factors considered by the Court weighs in favor of preliminary approval.

**C.      Class Notice**

1.      Method of Providing Notice

Rule 23(c)(2)(B) provides that "[i]n any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must fairly apprise prospective class members of the terms of the proposed settlement and of their options with respect to the settlement. *Eisen v. Carlisle &*

1    *Jacquelin*, 447 U.S. 156, 174 (1974).

2    Following preliminary approval, the Settlement Agreement provides the Settlement

3    Administrator will send each Settlement Class member a summary notice to the most recent email

4    address the member provided to Uber, which will include: contact information for proposed Class

5    Counsel; the address for the settlement website; instructions on how to access the Court's docket

6    via PACER; the date of the final approval hearing; and instructions on how to object or opt-out of

7    the Settlement.  Mot., Exs. A-B.  In addition, the proposed Class Notice describes the settlement in

8    detail and provides contact information for Plaintiff's counsel.  The proposed notice will also

9    disclose the date, time, and place of the fairness and final settlement hearing, and the procedures

10   for commenting on the settlement and appearing at the hearing.  *Id.*

11   The parties maintain electronic mail is the best notice practicable in this case because it

12   provides actual notice of the settlement to all class members using the method by which Uber

13   communicates with its users.  Mot. at 9; *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-

14   12 (1985) ("The notice must be the best practicable, reasonably calculated, under all the

15   circumstances, to apprise interested parties of the pendency of the action and afford them an

16   opportunity to present their objections." (internal citations and quotations omitted)).  Uber

17   maintains a list of email addresses for all Settlement Class members and communicates with them

18   via email, including by sending receipts by email.  Horton Decl. ¶ 11.  Moreover, approximately

19   92% of the Settlement Class used the Uber app within the twelve months before the filing of

20   Plaintiff's Preliminary Approval Motion, strongly indicating that the Settlement Class members

21   use the email addresses associated with their Uber Accounts.  *Id.*  Uber does not maintain mailing

22   street addresses for Class members or typically communicate with Class members by U.S. mail.

23   As such, it is likely that Class Members will receive the best practicable notice of the proposed

24   settlement by email.

25   The Court approves the method of notice provided in the Settlement Agreement as it

26   provides the best notice that is practicable under the circumstances.  *See* Fed. R. Civ. P.

27   23(c)(2)(B).

28

United States District Court
Northern District of California

### 2. Contents of the Notice

As to the contents of the notice to the class, Rule 23 requires "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice complies with all these requirements. In addition, the notice explains that class members may object, indicates the time and place of the final approval hearing, provides information regarding the attorneys' fees and class representatives' incentive awards, and indicates that additional information regarding the Settlement is available through Class Counsel, whose contact information is provided in the Notice. Mot., Exs A and B. The notice also explains how the settlement fund will be allocated and points to the website that contains additional information about this case and the Settlement. *Id.* This information is provided in plain English. Accordingly, the Court finds the contents of the Class Notice comply with Rule 23's requirements.

### 3. Costs of Notice Provision and Settlement Administration

All fees and expenses of the Settlement Administrator shall be paid by Uber. Settlement Agreement ¶ 13. The parties agree to cooperate in good faith during the settlement administration process. *Id.*

## CONCLUSION

In light of the foregoing analysis, the Motion for Preliminary Approval of Class Settlement is **GRANTED** as follows:

1) This Order incorporates by reference the definitions in the Settlement Agreement and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement Agreement.

2) The proposed Settlement Class is hereby conditionally certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of settlement. The Settlement Class is

defined as: "All persons who, from June 1, 2010 through November 20, 2015, used their Uber

Accounts to arrange for transportation from a transportation provider to or from an airport in

California and paid an Unremitted California Airport Fee Toll." Certification of the Settlement

Class is solely for settlement purposes and without prejudice in the event the Settlement

Agreements are not finally approved or otherwise do not take effect.

3) The Settlement Agreement is preliminarily approved as fair, adequate, and

reasonable pursuant to Federal Rule of Civil Procedure 23(e).

4) The Court appoints and designates Plaintiff Vamsi Tadepalli as class representative

for settlement purposes only.

5) The Court appoints Schneider Wallace Cottrell Konecky Wotkyns LLP, Bailey &

Glasser LLP, and Jaile & Trifilo LLC as Class Counsel for the Settlement Class.

6) The Court appoints Kurtzman Carson Consultants LLC as the Settlement

Administrator. The Settlement Administrator shall be responsible for providing notice to the class

of this Settlement, and of the preliminary and final approval thereof.

7) The Settlement Administrator will send or cause to be sent the Email Notice by

**January 12, 2016**. On the same date it disseminates the Email Notice, the Settlement

Administrator shall also make active a website that provides relevant forms and court documents

that Class Members may read and download, principally: (i) the Website Notice; (ii) the

Settlement Agreement; (iii) the Court's Preliminary Approval Order; (iv) opt-out forms; and (v)

Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses, when it

becomes available. The website shall be developed, hosted and maintained by the Settlement

Administrator for the entire period detailed in the Settlement Agreement.

8) Any request for exclusion by members of the Settlement Class to the proposed

Settlement Agreement must be postmarked or submitted electronically on the website by **March

11, 2016**, and in compliance with the terms of the Settlement Agreement. Any objection by

members of the Settlement Class must be filed with the Court by **March 11, 2016**, and in

compliance with the terms of the Settlement Agreement.

9) Plaintiff shall file his Final Motion to Approve Settlement by **March 24, 2016**. On

that same date, Class Counsel shall also file its Motion for Attorneys' Fees and Costs.

         10)     A Fairness Hearing shall be held before this Court on **April 21, 2016**, at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California to determine all necessary matters concerning the Settlement Agreement, including: whether the proposed Settlement Agreement's terms and conditions are fair, adequate, and reasonable; whether Class Counsel's attorneys' fees and reimbursement of expenses should be approved; and whether an order approving the Settlement Agreement and dismissing the Action on the merits and with, subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreement, should be entered.

         11)     The Fairness Hearing may, without further notice to the Settlement Class (except those who have filed timely objections or entered appearances), be continued or adjourned by order of the Court.

         12)     Counsel for the Parties are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement Agreement which are not materially inconsistent with either this Order or the terms of the Settlement Agreement.

        **IT IS SO ORDERED.**

Dated: December 17, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge