1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                     NORTHERN DISTRICT OF CALIFORNIA

8

VAMSI TADEPALLI,

9                    Plaintiff,                    Case No.  15-cv-04348-MEJ

10         v.                                      **ORDER GRANTING FINAL
                                                   APPROVAL OF CLASS SETTLEMENT
11                                                 AND MOTION FOR REASONABLE
    UBER TECHNOLOGIES, INC.,                       ATTORNEYS' FEES AND COSTS**
12                   Defendant.
                                                   Re: Dkt. No. 26
13

14

15                              **INTRODUCTION**

16         In this putative class action, Plaintiff Vamsi Tadepalli ("Plaintiff") brings claims against

17 Defendant Uber Technologies, Inc. ("Uber") on behalf of a class of Uber passengers who

18 allegedly paid Uber drivers any tax, fee, toll, or surcharge for airport pick-ups or drop offs when

19 no such fees existed.  Second Am. Compl. ("SAC") ¶ 9, Notice of Rem., Ex. B, Dkt. No. 1.  On

20 July 30, 2015, the Court preliminarily approved the parties' settlement of the case, in which Uber

21 has agreed to refund $1,814,909.55 in unremitted airport toll fees paid by its users.  Prelim.

22 Approval Order, Dkt. No. 24.  Now pending before the Court is Plaintiff's unopposed Motion for

23 Final Approval of Class Action Settlement and Motion for Attorney's Fees, Costs, and Expenses.

24 Dkt. No. 26.  The Court held a final fairness hearing on these matters on April 21, 2016.  Dkt. No.

25 30.  Having carefully considered the Motion, relevant legal authority, and the proposed Settlement

26 Agreement and all supporting documents, the Court **GRANTS FINAL APPROVAL** of the

27 Settlement Agreement and **GRANTS** Plaintiff's Counsel's Motion for Attorneys' Fees and Costs

28 as set forth below.

# BACKGROUND

## A.     Factual Background

Uber operates a "ride sharing" service that transports customers for a fee.  SAC ¶ 1.  Uber passengers summon Uber vehicles using a cell phone application or "app," and pay the fare through the same app.  *Id.*  Uber does not provide transportation services directly and does not own or operate vehicles; instead, it licenses the Uber app and related services to Raiser-CA, a transportation network company ("TNC"), which uses the Uber digital platform to connect users to independent, third-party providers.  *Id.*

On July 23, 2014, Plaintiff used the Uber app to obtain transportation to San Francisco International Airport ("SFO").  SAC ¶ 37.  He paid $27.57 for the trip to the airport, including a $4.00 "SFO Airport Fee Toll."  *Id.* ¶¶ 38-39.  Plaintiff alleges he was informed before he paid for his trip that a portion of the fees charged by Uber were "supposedly being assessed by SFO and Uber was simply acting as a pass through for SFO."  *Id.* ¶ 40.  Uber collected this separate fee (itemized on receipts as an "airport fee toll") when users of the Uber app arranged for transportation to or from certain California airports, including SFO, Los Angeles International Airport, and Sacramento International Airport.  *Id.* ¶¶ 5-8.  However, Plaintiff alleges that during the relevant period, California airports did not charge ridesharing drivers any such taxes, fees, tolls, or surcharges for airport pick-ups or drop-offs, yet Uber "imposed the fictitious Airport fees and tolls upon tens of thousands of passengers."  *Id.* ¶¶ 46-47.  Although Uber has acknowledged that users paid surcharges for trips to or from certain California airports, it denies that Uber or Raiser-CA misrepresented the nature of the fees or that users were charged the fees wrongfully.  Mot. at 2.

On December 3, 2014, Plaintiff filed this proposed class action against Uber in the Superior Court of the State of California for San Francisco County.  Notice of Rem., Ex. A.  He seeks to represent a class of all consumers who, from June 1, 2010 through November 20, 2015, were picked up or dropped off by an Uber transportation provider partner at a California airport, and paid a charge to Uber designated as an airport fee toll that was not remitted to the airport. SAC ¶ 48; Settlement Agreement ¶ 1(j).  He filed the operative SAC on September 21, 2015,

United States District Court
Northern District of California

United States District Court
Northern District of California

1   claiming (1) a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200

2   et seq., (2) breach of contract, (3) breach of good faith and fair dealing, (4) unjust enrichment and

3   restitution, (5) accounting, (6) conversion, (7) fraudulent concealment, and (8) constructive trust.

4   Uber removed the case to this Court on September 22, 2015.

5           On November 20, 2015, Plaintiff filed an unopposed Motion for Preliminary Approval of

6   Settlement.  Dkt. No. 12 ("Prelim. Approval Mot.").

**B.      Settlement Terms**

8           Uber's business records indicate that approximately $1,785,912.85 in unremitted

9   California airport fee tolls were charged to 355,619 users of the Uber app during the relevant

10  period.  *See* Settlement Agreement ¶ 1(hh); Horton Decl. ¶ 10, Dkt. No. 14; Schneider Decl. ¶ 8,

11  Dkt. No. 13.  Under the terms of the Settlement Agreement, Uber has agreed to credit or otherwise

12  refund all settlement class members for 100% of those fees.  Settlement Agreement ¶¶ 1(hh), (jj).

13  Uber has also agreed to do so without requiring settlement class members to complete or submit a

14  claim form.  *Id.* ¶ 7; Schneider Decl. ¶ 9.  Uber will also "cease collecting and not in the future

15  collect from users of the Uber app tolls or additional fees charged by California airports for trips to

16  or from any airport unless the fee is remitted to the airport."  Settlement Agreement ¶ 14.

17          1.      The Settlement Class

18          The "Settlement Class" is defined as "all persons who, since June 1, 2010, used their Uber

19  Accounts to arrange for transportation from a transportation provider to or from an airport in

20  California and paid an Unremitted California Airport Fee Toll.  Each such person shall be referred

21  to as a 'Settlement Class member.'"  *Id.* ¶ 1(ii).  The Parties agree this action should be certified

22  and proceed as a class action solely for purposes of settlement under Federal Rule of Civil

23  Procedure ("Rule") 23(e).  *Id.* ¶ 2.  The "Class Period" is defined as the time between June 1, 2010

24  and the date of the Settlement Agreement, November 20, 2015.  *Id.* ¶ 1(j).

25          2.      Distribution of Settlement Payments

26          Uber agrees to distribute the settlement payment to each Settlement Class member as

27  follows.  First, if a user has an active Uber account (defined as "an Uber Account . . . that has been

28  used by a Class Member within the twelve (12) months preceding the date of this Agreement to

request and pay for transportation from a transportation provider"), Uber shall "add a credit to each Active Account in the amount of the Settlement Payment due to the Class Member associated with the Active Account." *Id.* ¶¶ 1(b), 7(a). The account credit will be applied automatically to offset and reduce charges for Active Account Class Members' future uses of the Uber service until the Settlement Payment credit is exhausted. *Id.* ¶ 7(a). If a Class Member with an Active Account does not use the account credit within 365 days, Uber will remove the account credit from the Class Member's Uber Account and attempt to issue a credit in the same amount to the Payment Account associated with that member's Uber account (defined as "the PayPal account, credit card or debit card account linked to each Class Member's Uber account"). *Id.* ¶¶ 1(y), 7(a)(i).

If it is not feasible for Uber to credit an Active Account Class Member's Payment Account, Uber shall attempt to mail checks to such members, through the Settlement Administrator.[1] *Id.* ¶ 7(a)(i), (c). All such Class Members will have 120 days from the date of their Settlement Payments to cash their checks. *Id.* ¶ 7(c)(iii). Any checks that are not cashed within this period and any Settlement Payments that otherwise cannot be distributed in this manner shall be paid to National Consumer Law Center ("NCLC") and the East Bay Community Law Center ("EBCLC") as cy pres recipients—no unclaimed monies will revert to Uber. *Id.* ¶ 8.

      3.    <u>Other Payments</u>

          *a.*    *Service Award*

The Settlement Agreement calls for a Service Award to Plaintiff, separate from the airport fees and not to exceed $2,500, for his time and efforts in bringing and prosecuting this matter. *Id.* ¶ 11.

          *b.*    *Attorneys' Fees and Costs*

The Settlement Agreement also permits an award of attorneys' fees and costs, separate from the airport fees, to Class Counsel: the law firms of Schneider Wallace Cottrell Konecky Wotkyns LLP, Bailey & Glasser LLP, and Jaile & Trifilo LLC. *Id.* ¶ 12. Under the agreement,

---

[1] Under the terms of the Settlement Agreement, Kurtzman Carson Consultants LLC shall serve as the Settlement Administrator for the settlement of the Action and shall also be responsible for providing notice to the class of this Settlement, and of the preliminary and final approval thereof. Settlement Agreement ¶ 1(gg).

United States District Court
Northern District of California

attorneys' fees will not exceed (i) Class Counsel's lodestar, or (ii) 10% of the Settlement Amount, whichever is less. *Id.* Costs and expenses to be sought and awarded will be the actual recoverable costs and expenses incurred by Class Counsel. *Id.*

### 4. Injunctive Relief

The Settlement Agreement also provides for injunctive relief whereby "Uber will cease collecting and not in the future collect from users of the Uber app tolls or additional fees charged by California airports for trips to or from any airport unless the fee is remitted to the airport." *Id.* ¶ 14. Uber may still assess "surcharges or other added fees" for trips to or from California airports or other destinations, provided those surcharges and fees are not described as "tolls" that are charged by airports if the fees are not remitted to the airports. *Id.*

### 5. Notification of Settlement

Under the Settlement Agreement and the Court's preliminary approval order, notice was provided to Class Members as follows:

> a. Identification of Class Members. Within 15 days of Preliminary Approval, Uber shall provide the Settlement Administrator and Class Counsel with a data file listing Settlement Class members and identifying, for each Settlement Class member, the name and email address associated with the Settlement Class member's Uber Account, and the aggregate Unremitted California Airport Fee Tolls each Class Member paid during the Class Period.

> b. Email Notice to Class Members. Within 30 days of Preliminary Approval, the Settlement Administrator will send or cause to be sent the Email Notice, substantially in the form attached hereto as Exhibit A, to the email address associated with each Settlement Class member's Uber account. The Email Notice shall include a prominently displayed hypertext link to the Settlement Website, with clear language directing Class Members to the website via the link. For emails that result in a bounce-back or are otherwise undeliverable, an attempt will be made to re-send the Email Notice once prior to the Notice Date. Uber represents and warrants that email is the primary means by which Uber communicates with its users, and that notice by email is calculated to reach 90% of Settlement Class Members.

> c. Website Notice. Effective on the Class Notice Date [defined below], the Settlement Administrator shall make active a website that provides relevant forms and court documents that Class Members may read and download, principally: (i) the Website Notice; (ii) the Settlement Agreement; (iii) the Court's Preliminary Approval Order; and (iv) opt-out forms; and (v) Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and

Expenses, when it becomes available. The website shall be developed, hosted and maintained by the Settlement Administrator through the Effective Date [defined below].

*Id.* ¶ 15.

### 6.   Opt-Outs and Objections

Both the Email Notice (Prelim. Approval Mot., Ex. A) and the Website Notice (*id.*, Ex. B) (collectively, "Class Notice") provide that Settlement Class members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement ("opt-out"), postmarked or submitted electronically on the website, within 60 days of the class notification, as defined below.  Settlement Agreement ¶ 16.  The opt-out request must contain the Settlement Class member's name, address, mobile phone number, and email address associated with the Settlement Class member's Uber Account, and be personally signed, or if via website, electronically signed, by the Settlement Class member who seeks to opt out.  *Id.*  Any Settlement Class member who opts out of the Settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement.  *Id.*

The Class Notice provided that any Settlement Class members who wish to object to the Settlement Agreement must file a written statement of objection postmarked within 60 days of the class notification.  *Id.* ¶¶ 1(i), 17.  The Notice of Objection must state the basis for the objection and include any supporting papers.  *Id.* ¶ 17.  It must contain the name, address, telephone number, and email address of the Settlement Class member making the objection, and be signed by the Settlement Class member.  *Id.*  Settlement Class members who fail to make objections in this manner are deemed to have waived any objections and are foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.  *Id.*

### 7.   Final Approval and Judgment Order

Although the Court granted preliminary approval, the Settlement Agreement remained subject to issuance by the Court of a Final Approval Order that: (1) grants final approval of the Agreement; (2) finds the Class Notice satisfies the requirements of due process and Rule 23(e)(1); (3) finds the Agreement is fair, reasonable and adequate to the Class such that each Settlement Class member (except those who submit a timely and valid request for exclusion from the Class)

United States District Court
Northern District of California

will be bound by the Agreement; (4) dismisses on the merits and with prejudice all claims asserted against Uber; and (5) retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement. *Id.* ¶ 20.

        8.    <u>Releases</u>

Upon entry of the Final Order and Judgment, the Settlement Agreement provides that all Class Members who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released, relinquished, and discharged all claims against the Settlement Administrator and Uber, and each and all of its past, present, and future parents, subsidiaries, affiliated companies and corporations "that are based upon, arise out of, or are related to or connected with, directly or indirectly, in whole or in part, the facts, activities, or circumstances alleged in the SAC against Defendant for Uber's alleged charging or collecting of Airport Toll Fees to Class Members for trips to or from California airports that were not remitted to the airport." *Id.* ¶¶ 1(ee)-(ff), 23; *see also* Dkt. No. 22 (Am. ¶ 23). The release does not affect any claims that could be made by Class Members related to the charging of Safe Ride Fees. *Id.* ¶ 23. This release extends to claims the Class Members "do not know or suspect to exist in their favor, which, if known by them, would have materially affected their decisions to enter into this Agreement." *Id.* ¶ 24.

**C.    Preliminary Approval**

On December 17, 2015, the Court conditionally certified the stipulated and proposed class for purposes of settlement pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), defined as:

> All persons who, from June 1, 2010 through November 20, 2015, used their Uber Accounts to arrange for transportation from a transportation provider to or from an airport in California and paid an Unremitted California Airport Fee Toll.

Prelim. Approval Order at 22. The Court appointed Schneider Wallace Cottrell Konecky Wotkyns LLP, Bailey & Glasser LLP, and Jaile & Trifilo LLC as Class Counsel for the Settlement Class, and Plaintiff Vamsi Tadepalli as class representative for settlement purposes only. *Id.* The Court

United States District Court<br>Northern District of California

also approved the form and content of the proposed Email Notice, as well as the Notice Plan as set forth in the parties' Agreement. *Id.* The Court appointed Kurtzman Carson Consultants ("KCC") as the Settlement Administrator. *Id.*

**D.    Post-Preliminary Approval**

Following preliminary approval, KCC provided notice via email to all Uber registered emails, and 97.31% of them were successfully delivered. Robin Decl. ¶ 9, Dkt. No. 26-4. The email included a prominently displayed hypertext link to the Settlement Website. *Id.* The Settlement Administrator also provided notice via website (www.CaliforniaAirportFeeTollSettlement.com). *Id.* ¶ 11; Am. Stip. ¶ 15, Dkt. No. 25.

Plaintiff filed the present Motion on March 24, 2016. Dkt. No. 26. The Court held a final fairness hearing on April 21, 2016. Dkt. No. 30. No objections to the proposed settlement have been received.

## DISCUSSION – FINAL APPROVAL

**A.    Legal Standard**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Additionally, Rule 23(e) requires the Court to determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Id.* at 1026; Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."). To assess whether a settlement proposal is fair, adequate, and reasonable, the Court must generally balance a number of factors, including:

(1) the strength of the plaintiffs' case; (2) the risk, expense,

United States District Court
Northern District of California

8

> complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and  (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citations omitted). Where a settlement agreement is negotiated prior to formal class certification, it is subject to a higher level of scrutiny, and a court's approval order must ensure that the settlement is not the product of collusion among the negotiating parties. *Id.* at 946-47.

**B.      Adequacy of Notice**

Rule 23(e) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." (citation omitted)).  "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quotation omitted).  The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement. *See, e.g.*, *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1027 (N.D. Cal. 1999).

As discussed above, the Court previously approved the form and content of the proposed Email Notice and the Notice Plan as set forth in the parties' Agreement.  The Court also ordered the distribution of the Notice to the class be completed by January 12, 2016.  Prelim. Approval Order at 22.  Having reviewed Plaintiff's Motion, the Court finds the parties have fulfilled the Notice Plan.  Pursuant to the Settlement Agreement and Preliminary Approval Order, KCC sent notice to all Class members via email on January 12, 2016, which contained clear language directing Class members to a prominently displayed hypertext link to the Settlement Website.

1    Robin Decl. ¶¶ 9, 11; Am. Stip. ¶ 15; Prelim. Approval Order at 5-6.  The Settlement

2    Administrator also created an active website that provides relevant forms and court documents to

3    read and download, including among others: (1) the Website Notice; (2) The Settlement

4    Agreement; (3) the Court's Preliminary Approval Order; (4) opt-out forms; and (5) Class

5    Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses, when

6    available.  Robin Decl. ¶ 11.  The Website Notice fairly and accurately informs Class members of

7    the nature of the action, the terms of the proposed settlement, the effect of the action and

8    settlement on other actions raising similar claims, the Class members' rights to exclude

9    themselves from this action, and the Class members' rights to object to the proposed settlement.

10   *Id.*  It also prominently includes the deadlines for exclusions and objections.

11   **C.    Fairness, Adequacy, and Reasonableness**

12          The Court now examines the Settlement Agreement to ensure it is "fair, reasonable, and

13   adequate."  Fed. R. Civ. P. 23(e)(2).  In doing so, the Court considers the *In re Bluetooth*

14   settlement factors listed above.  654 F.3d at 946.  As noted, when settlement occurs before formal

15   class certification, settlement approval requires a higher standard of fairness in order to ensure that

16   class representatives and their counsel do not secure a disproportionate benefit at the expense of

17   the class.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

18          1.    *In re Bluetooth* Factors

19          Plaintiff and the Class believe they are entitled to a full refund for paid airport tolls that

20   Uber did not remit to airports.  However, Uber disputes this and, had the case proceeded to trial,

21   both Uber and the Class risked much.  For instance, Plaintiff notes Uber's Terms and Conditions,

22   and specifically its arbitration clause, which could have precluded this class action entirely.  Mot.

23   at 10.  Additionally, Uber argued that Plaintiff failed to allege reliance on Uber's allegedly

24   misleading statements, which is an issue that posed challenges both to liability and class

25   certification.  *Id.*  Difficulties and risks of litigating weigh in favor of approving a class settlement.

26   *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

27          Conversely, if Uber litigated to a decision on the merits, it risked the possible loss of

28   customers, goodwill ,and share value exceeding the amounts at issue here.  Further, while Plaintiff

United States District Court
Northern District of California

and the Class believe that class certification in this type of case is axiomatic—with virtually the same transaction and charge for each Class member—there is always a risk that certification will not be granted.  Uber indicated it would oppose certification and has stipulated to class treatment solely for the purposes of settlement.  Am. Stip. at 3-4.  Lastly, litigation against companies providing ride-sharing services such as Uber for fees charged is relatively new, and thus there is some inherent uncertainty in the law based upon the novelty of the so-called ridesharing economy.

As to the amount offered in settlement, under the terms of the Settlement Agreement, Uber has agreed to credit or otherwise refund all settlement class members for 100% of the fees incurred.  Settlement Agreement ¶¶ 1(hh), (jj).  The Settlement does not require Class members to fill out a claim form—their full refunds are automatic.  Such a high percentage of recovery is a fair and good result for the class.  *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (noting that "a cash settlement amounting to a fraction of the potential recovery does not per se render the settlement inadequate or unfair," and approving a settlement for about one-sixth of the potential damages in light of the difficulties of proof and uncertainty of damages).

The state of the proceedings also weighs in favor of final approval.  Although the parties did not engage in formal discovery, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Id.* (quotation omitted).  Accordingly, courts often "look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case."  *Willner v. Manpower Inc.*, 2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (citation omitted).  In the process of discussing the allegations in Plaintiff's Complaint, counsel for the parties also discussed a potential settlement over a period of approximately 45 days, after which Uber agreed to the provisions in the proposed settlement now before the Court.  Mot. at 2.

The experience of Class Counsel also weighs in favor of final approval.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Class Counsel, Schneider Wallace Cottrell Konecky Wotkyns LLP,

United States District Court
Northern District of California

Bailey & Glasser LLP, and Jaile & Trifilo LLC are experienced class action attorneys who have qualified as lead class counsel in class actions pending in courts throughout California, and across the country.  Prelim. Approval Order at 12; *see also* First Schneider Decl. ¶ 5, Dkt. No. 13.  They have extensive experience in representing consumers in complex class action litigation.  Second Schneider Decl. ¶¶ 1-6, Dkt. No. 26-6; Roddy Decl. ¶¶ 1-11, Dkt. No. 26-5.  They indicate their experience enabled them to evaluate the merits of the claims asserted in an efficient manner, and they premised their agreement upon substantiation of Uber's representations about the size of the Class and amounts at issue, which they have substantiated through informal discovery and summary data from Uber's business records.  Mot. at 11.

Finally, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quotation omitted).  No class members submitted objections to the Settlement Agreement.  Robin Decl. ¶¶ 12-13.  Accordingly, this factor weighs in favor of final approval.

2.    <u>Potential Collusion</u>

In addition to the factors above, where a settlement is agreed upon prior to class certification, the Court must also consider whether the settlement is the product of collusion among the negotiating parties.  *In re Bluetooth*, 654 F.3d at 947.  In its Preliminary Approval Order, the Court found "the settlement in this case appears to be the product of serious, informed, non-collusive negotiations."  Prelim. Approval Order at 14.  In doing so, the Court primarily considered the procedure by which the parties arrived at their settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010).  In reviewing the negotiations that took place, the Court noted the parties reached terms on the proposed settlement through a series of negotiations between experienced counsel that were conducted at arm's-length and in good faith over the course of 45 days.  Prelim. Approval Order at 14; *see also Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion).

In addition to the procedure by which the parties arrived at their settlement, the Court must

United States District Court
Northern District of California

United States District Court
Northern District of California

also look for other signs that may demonstrate collusion, including (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *In re Bluetooth*, 654 F.3d at 947. The first factor is not present here—while the Class receives 100% of the fees incurred, attorneys' fees will not exceed either (i) Class Counsel's lodestar or (ii) 10% of the Settlement Amount, whichever is less. Settlement Agreement ¶ 12. The third factor is also not present—any Settlement Payments that cannot be distributed to Class Members shall be paid to NCLC and EBCLC as cy pres recipients. *Id.* ¶ 8. No unclaimed monies will revert to Uber. *Id.*

As to the second factor, the Settlement Agreement permits an award of attorneys' fees and costs separate from the airport fees. *Id.* ¶ 12. "'[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *In re Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991) (alteration in original)). "'Although clear sailing provisions are not prohibited, they by [their] nature deprive[ ] the court of the advantages of the adversary process in resolving fee determinations and are therefore disfavored.'" *Id.* at 949 (quoting *Weinberger*, 925 F.2d at 525; other citations and internal quotations omitted; alterations in original).

Here, despite the clear sailing provision, the class stands to receive a monetary award greater than it might have received had the case proceeded to trial. As the Ninth Circuit has noted, moreover, the inference of collusion drawn from a clear sailing provision is reduced when the agreement lacks a reversionary or "kicker provision." *In re Bluetooth*, 654 F.3d at 949 ("For this same reason, a kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger of collusion already suggested by a clear sailing provision. . . . The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees"). The absence of a

"kicker provision" in the parties' settlement and the fact that the class is receiving 100% of the fees incurred reduces the likelihood that the parties colluded to confer benefits on each other at the expense of class members.  Further, while in *In Re Bluetooth* the parties had negotiated a fee award eight times higher than the fixed cy pres relief negotiated for the class, *id.* at 947-48, in stark contrast, the parties in this case have negotiated a settlement that provides direct payment to the Class, and there is no evidence of an effort to short-change the Class so that Class Counsel may be unjustly enriched.  Unlike in *Bluetooth*, the fee request here is not disproportionately higher than the benefits negotiated for the class—indeed it is much lower.  Finally, the Court has considered Class Counsel's fee request and the reasonableness of those fees in the section below and finds them to be fair and reasonable under the circumstances.  Thus, the Court concludes that the provision at issue here does not raise an inference of collusion that warrants invalidation of the class settlement as a whole.

        **3.**    <u>Summary</u>

       Given the foregoing analysis, the Court finds that even under heightened scrutiny, the Settlement Agreement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

**D.**     **Certification of the Settlement Class**

       In considering Plaintiff's Preliminary Approval Motion, the Court considered in detail whether all of the elements of Rule 23 are met such that certification of a settlement class was warranted.  *See* Prelim. Approval Order at 16-22.  "'Because the Settlement Class has not changed, the Court sees no reason to revisit the analysis of Rule 23.'"  *G.F. v. Contra Costa Cty.*, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (quoting *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013)).  The Class has been properly certified for settlement purposes.

**E.**     **Service Award**

       In Paragraph 11 of the Settlement Agreement, the parties agreed that Plaintiff should receive a service award of $2,500 to compensate him for his efforts on behalf of the class.  It has long been established that courts have the discretion to approve service or "incentive" awards to representative plaintiffs in class actions as compensation for their time and effort for the benefit of

United States District Court
Northern District of California

1    others, and for having undertaken the risks inherent in serving as a named plaintiff.  *See, e.g.*,

2    *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *In re Mego*, 213 F.3d at 463; *Van*

3    *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1994).  In evaluating the

4    reasonableness of a requested award, the Court should consider factors such as "the actions the

5    plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted

6    from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the

7    litigation."  *Staton*, 327 F.3d at 977 (internal punctuation omitted).  Additionally, courts focus on

8    the number of class representatives, the average incentive award permitted by courts, and the

9    proportion of the entire settlement that is spent on the incentive award.  *In re Online DVD-Rental*

10   *Antitrust Litig.*, 779 F.3d at 947 (approving a $5,000 incentive award for each of nine class

11   representatives even where each class member only received $12).

12           It is undisputed that Plaintiff actively participated in this litigation—he provided valuable

13   information to counsel, was subject to and prepared for deposition, stayed apprised of

14   developments in the case and responded promptly to all requests Counsel made of him, and

15   reviewed the Settlement Agreement and is satisfied with its terms.  Mot. at 17.  An award of

16   $2,500 is on the low end of what has been approved by courts in cases where more modest results

17   were achieved.  *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal.

18   2015) ("[I]n this district, a $5,000 incentive award is presumptively reasonable."); *In re Mego*, 213

19   F.3d at 457-58 (approving $5,000 to each of two named plaintiffs in a "weak" action for securities

20   violations resulting in a common fund of $1.725 million); *Bellinghausen v. Tractor Supply Co.*,

21   306 F.R.D. 245, 268 (N.D. Cal. 2015) (approving $10,000 incentive award).  Accordingly, the

22   Court finds the service award reasonable and approves it.

23   **F.    Summary Regarding Final Approval**

24           Given the foregoing analysis, the Court finds that final approval of the Settlement

25   Agreement is warranted under the circumstances.  The Court now turns to the matter of Class

26   Counsel's attorneys fees' and costs.

27   ///

28   ///

United States District Court
Northern District of California

15

1

**ATTORNEYS' FEES AND COSTS – DISCUSSION**

2

**A.      Legal Standard**

3

    "In a certified class action, the court may award reasonable attorney's fees and nontaxable

4

costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Thus, in

5

awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), "courts have an

6

independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the

7

parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (citations omitted).

8

    In this circuit, there are two primary methods used to calculate reasonable attorneys' fees:

9

the lodestar method and the percentage-of-recovery method.  *In re Online DVD-Rental Antitrust*

10

*Litig.*, 779 F.3d at 949.  The lodestar represents a reasonable hourly fee multiplied by the number

11

of hours reasonably expended on the litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433

12

(1983).  The lodestar figure is a presumptively reasonable fee.  *Clark v. City of L.A.*, 803 F.2d 987,

13

990-91 (9th Cir. 1986).

14

    An award of attorneys' fees is authorized in this case by both: (1) the claims, e.g., the

15

California Consumer Legal Remedies Act, Cal. Civ. Code § 1780(e), in which "costs and

16

attorney's fees [are awarded] to a prevailing plaintiff," and (2) the Settlement Agreement, in which

17

Uber agreed not to oppose any request for attorneys' fees, costs, or expenses that did not exceed

18

$200,000.  Uber agreed to pay Plaintiff's and the Class's attorneys' fees and recoverable costs

19

separately by wire transfer.  Am. Stip. § 12.  Class Counsel seeks $181,490.95, which represents

20

ten percent of the settlement amount, and $4,490.04 in expenses.  *See* Second Schneider Decl. ¶ 8;

21

Roddy Decl. ¶¶ 22-24.  Although Class Counsel does not seek a lodestar amount, the Court applies

22

the lodestar method to assess the reasonableness of Plaintiff's attorneys' fees request.  *See G.F.*,

23

2015 WL 7571789, at *12 ("Although Plaintiffs do not request a lodestar award of attorneys' fees

24

in this case, this Court uses the fees that it could have awarded Plaintiffs under the lodestar

25

analysis as a gauge of the reasonableness of the attorneys' fees provided for in the Settlement

26

Agreement." (citation and internal quotations omitted)).

27

    Among the factors that the Court should consider in setting the lodestar and determining

28

the appropriate enhancement, or multiplier, are:

United States District Court
Northern District of California

United States District Court
Northern District of California

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

**B.      Lodestar Analysis**

Class Counsel submits that calculating their fees on the basis of hours expended multiplied by each attorney's customary billing and/or market rate would lead to a lodestar amount of $223,649.65.  Second Schneider Decl. ¶ 8; Roddy Decl. ¶¶ 22-24.  The following chart represents the breakdown of the lodestar:

| Firm | Hours | Rate Range | Lodestar[2] |
|------|-------|-----------|-------------|
| Bailey & Glasser LLP | 149.15 | $200-$700 | $74,135.00 |
| Jaile & Trifilo LLC | 68.07 | $495 | $33,694.65 |
| Schneider Wallace Cottrell Konecky Wotkyns LLP | 224.90 | $200-$700 | $115,820.00 |
| **TOTALS:** | 442.12 | --- | **$223,649.65** |

Roddy Decl. ¶¶ 21-24; Second Schneider Decl. ¶ 8.

1.      Hourly Rate

First, to determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  In considering the reasonableness of Class Counsel's hourly rates, as the Court has noted above, Plaintiff seeks an hourly rate of between $200 and $700 per hour depending on the particular attorney or counsel.  To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by

---

[2] The lodestar figures listed here take into account the hours spent by the various attorneys working on the case.  Plaintiff provided a breakdown of all the hours spent by the various attorneys and related staff with his Motion.  *See* Roddy Decl. ¶¶ 21-24; Second Schneider Decl. ¶ 8.

lawyers of reasonably comparable skill, experience, and reputation.  *See id.* at 979.  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  *Id.*  Here, the relevant community is the San Francisco Bay Area, and the reasonableness of rates charges should therefore be determined by reference to the rates charged by Bay Area attorneys with commensurate skill, experience, and reputation.

In support of their rates, skill, experience, and reputation, Class Counsel provided supporting declarations of attorneys from each of the firms that worked on this case.  *See* Roddy Decl.; Second Schneider Decl.  These declarations describe the firm the individual declarant attorney works with, their efforts in this litigation, their methods for calculating their lodestars, as well as the experience, skill, and reputation of the organizations and the individuals who worked on this case.  The declarations demonstrate these firms are experienced and tested in the area of complex litigation with strong reputations in the legal community.  Class counsel also provides evidence that the requested rates have been approved in multiple class actions.  *See* Roddy Decl. ¶ 20; Second Schneider Decl. ¶ 9.  The Court finds the evidence submitted by Class Counsel demonstrates that the range of rates requested by the attorneys here are in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience in this District.  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding district court did not abuse its discretion in awarding 2008 hourly rates for Bay Area attorneys of up to $875 for a partner, $700 for an attorney with 23 years of experience, $425 for an attorney with approximately five years of experience, and $190 for paralegals); *see also Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals).  While under other circumstances greater scrutiny might be appropriate for some of the hourly rates sought here, the Court is satisfied Class Counsel's hourly rates fall under the range of reasonable fees—particularly as the Court is only analyzing the lodestar figure as a secondary test in order to determine whether the sums already agreed to by the parties are reasonable.

///

2.   Hours Expended

Beyond establishing a reasonable hourly rate, a party seeking attorneys' fees bears the burden to "document[ ] the appropriate hours expended." *Hensley*, 461 U.S. at 437. Such an applicant must exercise sound "billing judgment" as to the number of hours worked, eliminating excessive, redundant, or unnecessary hours, and provide billing records supporting the time claimed. *Id.* at 433-34. Class Counsel "is not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his time expenditures." *Id.* at 437 n.12; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and 'identifying the general subject matter of his time expenditures.'" (quotation omitted)).

In their declarations, Class Counsel notes that the "total number of hours is based only on the hours reasonably expended to achieve an excellent result for the class." Roddy Decl. ¶ 21. Additionally, each attorney attests to the fact that they reviewed their organization's time records in this case and independently exercised their billing judgment to eliminate or reduce certain time that did not appear to be reasonably spent or to otherwise limit their time to that which was reasonable and benefitted the class. *Id.* ¶ 25; Second Schneider Decl. ¶¶ 7, 10. Although Class Counsel did not provide detailed time records for the attorneys and support staff working on this case, having carefully reviewed the declarations above and the supporting documentation, the Court finds Class Counsel has met their burden of demonstrating the reasonableness of the time their counsel expended on this litigation.[3] There has been no challenge to the time spent by these organizations, and the Court cannot find grounds for further reducing the hours spent in this

---

[3] Former Supreme Court Justice Sandra Day O'Connor, sitting by designation, has emphasized the overall equitable nature of fee analysis: "[t]he net result of fee-setting jurisprudence . . . is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189 (2d Cir. 2007) (O'Connor, J., sitting by designation, joining in the opinion) (citation omitted). Supreme Court Justice Elena Kagan has recently echoed these sentiments: "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011).

United States District Court
Northern District of California

1    litigation.  Accordingly, the Court finds the number of hours spent by attorneys and related staff in

2    these firms was reasonably expended on the litigation and settlement of this case.

3        3.        Summary of Lodestar and Cost Comparison to Settlement Agreement Amounts

4        As noted above, the total lodestar for the three firms working on this case totals

5    $223,649.65.  In addition, Class Counsel incurred costs totaling $4,490.04.  Second Schneider

6    Decl. ¶ 8; Roddy Decl. ¶ 24.  However, Plaintiff has only requested that the Court approve an

7    award of $181,490.95, which represents ten percent of the settlement amount, and $4,490.04 in

8    costs.  Mot. at 13.  That amount is significantly less than what these attorneys might otherwise be

9    entitled to under the lodestar analysis.  Given the significant reduction in fees and costs, the Court

10   finds Plaintiff's request for attorneys' fees and costs reasonable under the circumstances.  *See,*

11   *e.g.*, *In re Bluetooth*, 654 F.3d at 945 ("Just as the lodestar method can 'confirm that a percentage-

12   of-recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery

13   method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.' 'If the

14   lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a

15   second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate.'"

16   (quotations omitted)); *Flores v. Alameda Cty. Indus. Inc*., 2015 WL 7180607, at *4 (N.D. Cal.

17   Nov. 16, 2015) ("The amount sought by plaintiffs' counsel represents only slightly over 10% of

18   the $1,140,000 total class settlement. This amount is consistent with the 'benchmark' in our

19   Circuit when fees are sought in this manner.").

20                          **CONCLUSION**

21       In light of the foregoing analysis, the Court hereby **GRANTS FINAL APPROVAL** to the

22   Settlement Agreement in this case; **GRANTS** Plaintiff's Motion for Reasonable Attorneys' Fees

23   and Costs in the amount of $181,490.95, and $ 4,490.04 in costs; and **GRANTS** the service award

24   of $2,500 to Plaintiff Vamsi Tadepalli.

25       The Court thus **ORDERS** the following:

26       1.        For the reasons set forth in the Order Granting Preliminary Approval, Dkt. No. 24,

27   the Court confirms class certification of the class for settlement purposes only.  The Settlement

28   Class is defined as: "All persons who, from June 1, 2010 through November 20, 2015, used their

United States District Court
Northern District of California

1   Uber Accounts to arrange for transportation from a transportation provider to or from an airport in

2   California and paid an Unremitted California Airport Fee Toll."

3          2.      The Court confirms the appointment of Plaintiff Vamsi Tadepalli as class

4   representative.

5          3.      The Court confirms appointment of Schneider Wallace Cottrell Konecky Wotkyns

6   LLP, Bailey & Glasser LLP, and Jaile & Trifilo LLC as Class Counsel for the Settlement Class.

7          4.      The Court finds and determines that Class Notice fully and accurately informed

8   Class Members of all material elements of the action, proposed settlement and their alternatives

9   with respect to the same, and that the notices constituted valid, due and sufficient notice of all

10   Class Members, as well as the best notice practicable under the circumstances.

11          5.      Based upon the Settlement Agreement, the declarations of the Claims

12   Administrator, and the other evidence in the record, the Court is satisfied that appropriate efforts

13   to identify and locate the members of the Settlement Class were made.

14          6.      The Court finally approves the Settlement Agreement and finds that the settlement

15   is fair, adequate, and in the best interests of the Class Members.

16          7.      In accordance with the terms of the Settlement Agreement, Uber shall pay a 100%

17   refund of the tolls collected, amounting to $1,814,909.55, and is hereby enjoined from continuing

18   to collect such tolls in California unless remitted to the airport.  This refund will be made

19   automatically and within 30 days from the date of this Order; Class Members do not have to

20   complete a claim form.

21          8.      The Court hereby voids any requests for exclusion which were not received by the

22   Claims Administrator or postmarked as of March 11, 2016.

23          9.      Plaintiff and all Class Members, other than those who have submitted timely, valid

24   opt-out requests, are bound by the release provisions contained in the Settlement Agreement.  The

25   Court bars and permanently enjoins Plaintiff and all Class Members, other than those who have

26   submitted timely, valid opt-out requests, from asserting, instituting or prosecuting, either directly

27   or indirectly, any claims released pursuant to the Settlement Agreement.

28         10.      The Court approves the award of attorneys' fees amounting to $181,490.955 and

expenses amounting to $4,490.04.  Uber shall pay this award to Class Counsel pursuant to the

Settlement Agreement and Amended Stipulation.

11.     The Court approves the service award of $2,500 to Plaintiff Vamsi Tadepalli.  Uber

shall pay this award pursuant to the Settlement Agreement.

12.     The Court retains continuing jurisdiction over: (a) implementation and enforcement

of the Settlement Agreement pursuant to further orders of the Court, until such time as the final

judgment contemplated hereby has become effective and each and every act agreed to be

performed by the parties hereto shall have been performed pursuant to the Settlement Agreement,

including the payments from the Settlement Fund and the relief to be granted to the Class

members; (b) any other action necessary to conclude this settlement and implement the Settlement

Agreement; (c) the enforcement, construction, and interpretation of the Settlement Agreement,

including but not limited to, any disputes concerning Class Members' release of claims; and (d)

the determination of validity of opt-outs, if called upon to make that judicial determination.

**13.**     The above-captioned action is **DISMISSED** on the merits and with prejudice,

subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreement as

described above.  This dismissal is without cost to any party except as specifically provided in the

Settlement Agreement.

     **IT IS SO ORDERED.**


Dated: April 25, 2016

                              _____
                              MARIA-ELENA JAMES
                              United States Magistrate Judge